Merrimack
No. 80-359

LEONARD GIRARD & a.

v.

TOWN OF ALLENSTOWN & a.

April 3, 1981

*Emile R. Bussiere*, of Manchester, by brief and orally, for the plaintiffs.

*Elliott Berry*, New Hampshire Legal Assistance, by brief and orally, for the intervenors.

Defendant, Town of Allenstown, waived brief and oral argument.

BROCK, J. The Superior Court (*Cann*, J.) has transferred the following question of law to this court:

> "Has the Town of Allenstown, through the grant of authority in RSA 49-B:8 (Supp. 1979) and/or its general police powers under RSA 31:39, been empowered by the

General Court to lawfully enact an ordinance limiting rent increases?"

We answer the question in the negative.

On March 11, 1980, the voters of Allenstown, at town meeting, enacted a "fair rental ordinance." The ordinance purports to limit the amounts by which owners of rental property can increase rents and establishes a "fair rental board" empowered "to regulate residential housing and rentals in the Town of Allenstown."

On May 6, 1980, the plaintiffs, owners of multi-unit rental properties in the town, filed a petition for declaratory judgment in the superior court questioning the validity of the ordinance. Although the plaintiffs have raised several arguments in support of their position that the ordinance is not valid, their principal claim is that the town lacked the authority to enact such an ordinance because the State legislature had not expressly delegated to it the power to control rents.

On June 3, 1980, the town filed its answer to the plaintiffs' petition, indicating that it agreed that the ordinance was invalid. At the same time, however, a number of tenant-residents in the town moved to intervene. Their motion was granted, and the trial court transferred the case to this court.

Our consideration of the question transferred must begin with a recognition that "[i]t is a long established principle under our law that towns are but subdivisions of the State and have only the powers the State grants to them." *Piper v. Meredith*, 110 N.H. 291, 295, 266 A.2d 103, 106 (1970). The intervenors, however, argue that the State has, under RSA 31:39 (Supp. 1979) and RSA 49-B:8 (Supp. 1979), delegated to the towns the power to enact ordinances such as the one at issue.

■ RSA 31:39 (Supp. 1979) delegates certain general police powers to the towns and municipalities within the State. *See Beck v. Town of Raymond*, 118 N.H. 793, 800, 393 A.2d 847, 851 (1978); *Piper v. Meredith*, 110 N.H. 295, 296, 266 A.2d 103, 106 (1970). Although the police power is broad and has been described as including "such varied interests as public health, safety, morals, comfort, the protection of prosperity, and the general welfare," *Piper v. Meredith, supra* at 294, 266 A.2d at 106, it is not unlimited. *Beck v. Town of Raymond, supra* at 798, 394 A.2d at 850; *accord Appeal of Meserve*, 120 N.H. 461, 464, 417 A.2d 11, 12 (1980); *L. Grossman & Sons, Inc. v. Town of Gilford*, 118 N.H. 480, 482–83, 387 A.2d 1178, 1180 (1978). Under our State Constitution "[t]he supreme legislative power . . . [is] vested in the senate and house of representatives . . . ." N.H. CONST. pt. II, art. 2. *See also*

N.H. CONST., pt. I, art. 29. For these reasons, we have held that the towns only have "such powers as are *expressly granted* to them by the legislature and such as are *necessarily* implied or incidental thereto." *Piper v. Meredith*, 110 N.H. 291, 295, 266 A.2d 103, 106 (1970). (Emphasis added.)

The intervenors concede that RSA 31:39 (Supp. 1979) does not expressly authorize towns to enact rent control measures, but they do assert that the "prudential affairs" clause of the statute provides sufficient legislative authorization. "Towns may make by-laws for the . . . making and ordering [of] their prudential affairs." RSA 31:39 (Supp. 1979); *see Piper v. Merdith, supra* at 296, 266 A.2d at 106–07. Therefore, the question before us is whether the authority to regulate rents is "necessarily implied or incidental" to the towns' authority to pass by-laws for the "making and ordering [of] their prudential affairs."

The term "prudential affairs" is one of ancient origin. *Piper v. Meredith*, 110 N.H. 291, 296, 266 A.2d 103, 106–07 (1970); *Rich v. Errol*, 51 N.H. 350, 354 (1871) (tracing origin of the phrase to at least 1679). This court, as early as 1820, recognized that the phrase is not intended to confer unfettered power, *Sanborn v. Town of Deerfield*, 2 N.H. 251, 253 (1820), nor should it be used as a substitute means of granting authority when express grants of power are more desirable to attain that end. *See Underhill v. Gibson*, 2 N.H. 352, 355 (1821).

"[I]t is worthy of note that the nearer we get to the time of the framers of the early statutes . . ." the more restrictive the view becomes of the powers and authority conveyed by the phrase to manage "their prudential affairs." *Cf. Rich v. Errol*, 51 N.H. 350, 355 (1871). While limited land use controls have been upheld under this general phrase, *see Beck v. Town of Raymond*, 118 N.H. 793, 798, 394 A.2d 847, 850 (1978), we are unaware of any decision of this court that would support the proposition that towns have the power to control rents or otherwise interfere with private contracts concerning the rental of property under the vague authority of "ordering their prudential affairs." When placed in its historical and proper constitutional context, we do not consider the language "to order their prudential affairs" to constitute a separate and distinct grant of legislative authority. *Piper v. Meredith, supra* at 302, 266 A.2d at 110 (Grimes, J., dissenting). Rather, the language is more suggestive of merely granting those powers that are "necessary and proper" in the execution of the powers that have been specifically granted to the towns. *See Rich v. Errol*, 51 N.H. 350,

354–55 (1871). *See generally, State v. Zetterberg*, 109 N.H. 126, 129, 244 A.2d 188, 191 (1968). We therefore hold that RSA 31:39 (Supp. 1979) does not convey to the towns the authority to adopt and enforce a rent control ordinance.

■ We next consider whether RSA 49-B:8 (Supp. 1979) grants authority to the towns to enact such an ordinance.

RSA 49-B:8 (Supp. 1979) provides that:

> "Any municipality may, by the adoption, amendment or repeal of ordinances or by-laws, exercise any power or function which the legislature has power to confer upon it, which is not denied either expressly or by clear implication, and exercise any power or function granted to the municipality by the constitution, general law or charter.
> . . ."

The intervenors argue that, because this section of the statute states that "any municipality may . . . exercise any power . . . which the legislature has . . .", the towns have been granted the authority to adopt rent control ordinances. However, if we were to interpret RSA 49-B:8 (Supp. 1979) as broadly and literally as the intervenors request, the result would be a total abdication and delegation of the legislative authority to towns, without any guidelines, supervision or legislative review whatsoever. Such an interpretation would raise serious constitutional questions. N.H. CONST. pt. I, art. 29, pt. II, art. 2. *Cf. Smith Ins. Co. v. Grievance Committee*, 120 N.H. 856, 861, 424 A.2d 816, 819–20 (1980). "If possible a statute will be interpreted with the presumption that the legislature intended to confine its action within constitutional bounds." *State v. Millette*, 112 N.H. 458, 465, 299 A.2d 150, 154 (1972); *see State v. Smagula*, 117 N.H. 663, 666, 377 A.2d 608, 610 (1977).

■■ The expressed legislative purpose of RSA ch. 49-B (Supp. 1969) was "to implement the home rule powers granted to municipalities by article 39, part first, of the constitution of the State of New Hampshire." RSA 49-B:1 (Supp. 1979). The power granted to cities and towns under N.H. Const. pt. I, art. 39, is the power "to adopt or amend their *charters or forms* of government . . . ." (Emphasis added.) This provision of our Constitution in no way provides or suggests that the towns, cities or other subdivisions of this State should have the right to exercise supreme legislative authority. Accordingly, we hold that RSA ch. 49-B (Supp. 1979) was intended only to provide a statutory framework by which the cities and towns may amend their actual form of government and

that RSA 49-B:8 (Supp. 1979) grants only the power necessary to carry out such changes. We answer the question transferred "no."

*Remanded.*

All concurred.