Department of Transportation Appeals Board
No. 91-035

APPEAL OF PHILIP AND SHIRLEY MATTHEWS

(New Hampshire Department of Transportation Appeals Board)

October 14, 1992

*Krans and Krans*, of Dover (*Hamilton R. Krans, Jr.* on the brief and orally), for the plaintiffs.

*John P. Arnold*, attorney general (*Karen A. Levchuk*, assistant attorney general, on the brief and orally), for the State.

THAYER, J. The plaintiffs appeal a decision of the department of transportation appeals board affirming a replacement housing compensation award of $35,300 awarded after the State acquired their home by eminent domain. The plaintiffs argue that the appeals board erred in finding that the department of transportation (DOT) was not precluded by federal regulations from changing the "designated replacement dwelling" after issuing a ninety-day eviction notice. Because the federal regulations do not preclude the DOT from changing the dwelling upon which the replacement housing compensation amount is based at any time, we uphold the DOT's replacement housing award. The plaintiffs also argue that the DOT was equitably estopped from changing the replacement dwelling and that the hearings examiner erred in considering whether the plaintiffs' home was a single-family dwelling. These issues were not properly preserved for appeal, however, and we will therefore not address them.

The plaintiffs, Philip and Shirley Matthews, owned a house on Spaulding Turnpike in Newington. The Matthews resided in the home with their son, daughter-in-law and three grandchildren. In June 1989, the State acquired the Matthews' home in an eminent domain proceeding pursuant to RSA chapter 498-A.

■ "Any agency acquiring real property using federal funds or state funds shall comply with the provisions of Title III of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 [42 U.S.C. §§ 4651 *et seq.*] . . . ." RSA 124-A:13, II. The rules implementing the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 are set forth in 49 Code of Federal Regulations part 24. Because State funds were used in this eminent domain action, the DOT is bound by these federal regulations.

New Hampshire law regarding relocation assistance and real property acquisition provides for a replacement housing payment to supplement the acquisition cost of a dwelling, thus raising the total amount available to the displaced homeowner to purchase a home comparable to the one taken by the State. *See* RSA 124-A:4. A comparable replacement dwelling is defined in 49 Code of Federal Regulations section 24.2(d), which provides, in part, that the dwelling

shall be: "Decent, safe and sanitary . . . : [f]unctionally equivalent to the displacement dwelling . . . : [a]dequate in size . . . : [and] [c]urrently available to the displaced person on the private market." In order to calculate the replacement housing payment, federal regulations state that "[i]f available, at least three comparable replacement dwellings shall be examined and the payment computed on the basis of the dwelling most nearly representative of, and equal to, or better than, the displacement dwelling." 49 C.F.R. § 24.403(a)(1). The supplemental payment is generally the difference between the cost of the home the State is acquiring and the cost of a comparable replacement dwelling for the displaced homeowners. 49 C.F.R. § 24.401(b)–(c). The replacement housing payment is limited to $22,500, RSA chapter 124-A:4, unless the DOT determines that the owners are entitled to last resort housing assistance, which is provided when "replacement dwellings are not available within the monetary limits." 49 C.F.R. § 24.404(a). The regulations provide for construction of a new replacement dwelling as a "method of providing replacement housing of last resort." 49 C.F.R. § 24.404(c)(1)(iii).

In this case, the DOT was able to locate only one comparable replacement dwelling, referred to as the "Pickering property," in the area in which the plaintiffs lived and wished to remain. Based upon the Pickering property, the DOT calculated a replacement housing payment of $51,620, allocating $44,995 to repair of the house. Because the Pickering property was the only comparable dwelling available and the cost of repairs necessary to make the house decent, safe and sanitary was above the $22,500 replacement housing payment limit, the DOT determined that the plaintiffs would receive last resort housing assistance. In early June 1989, after the replacement housing figure was determined based upon the Pickering property, the plaintiffs entered into negotiations for the purchase of the house. On June 26, 1989, the DOT sent the plaintiffs a letter which stated the replacement housing payment amount and an assurance that they would not be asked to move before ninety days from the date of the letter.

The plaintiffs and Mr. and Mrs. Pickering signed a sales agreement for the Pickering property on August 3, 1989, contingent upon the plaintiffs receiving a replacement housing payment from the DOT. Prior to signing the purchase agreement, Mr. Matthews informed the DOT that he believed their estimate of necessary repair work on the Pickering property was much too low. After signing the sales agreement, Mr. Matthews obtained estimates for repairs to the Pickering property totaling $201,733, which he presented to the DOT

on October 9, 1989. The State then calculated a new replacement housing entitlement ceiling of $57,650 based upon the cost of building a new house comparable to the plaintiffs' house taken by eminent domain. The hearings examiner ordered a replacement housing award of $35,300. The plaintiffs appealed to the department of transportation appeals board by filing a "motion for rehearing pursuant to RSA 541," *see* RSA 21-L:18, which they subsequently amended. The appeals board affirmed the hearings examiner's decision.

The plaintiffs appeal under RSA chapter 541 and RSA 21-L:18. *See* RSA 541:6. On appeal, the agency's findings of fact are "deemed to be prima facie lawful and reasonable." RSA 541:13. We will not overturn the agency's order unless the plaintiffs demonstrate that it was "clearly unreasonable or unlawful." *Id.*

The plaintiffs do not contest the amount of the award; rather, they argue that the DOT is precluded by federal regulations from changing the designated comparable replacement dwelling after the ninety-day notice has been sent. The appeals board ruled that the ninety-day time frame in 49 C.F.R. § 24.203(c) "is not a time limit for the selection of comparables for determining replacement housing compensation" and that "[a] displacee cannot be forced to move from a displacement dwelling unless replacement housing is available to such person . . . ." We agree.

The federal regulations require at least 90 days advance written notice of the earliest possible date of eviction. 49 C.F.R. § 24.203(c)(1). The DOT may issue this notice "90 days before it expects the person to be displaced or earlier." *Id.* § 24.203(c)(2). The notice must state a specific eviction date or that the occupant will receive a further notice indicating, with at least thirty days notice, the specific date of eviction. *Id.* § 24.203(c)(3). If a comparable dwelling has not been made available at the time of the notice, the notice must state that the occupant will not be required to move earlier than ninety days after a comparable dwelling is made available. *Id.* Section 24.204(a) states that no one may be required to move from a dwelling without one comparable replacement dwelling having been made available.

On June 26, 1989, Neil MacPherson of the DOT sent the plaintiffs a letter which stated:

"This letter will serve to assure you that you will not be asked to move before ninety (90) days from the date of this letter. I will forward another letter to you that will give an actual vacating date. Please be assured that we will continue to offer any assistance to help you through a difficult time.

You are eligible for up to fifty one thousand, six hundred twenty (51,620) dollars as a replacement housing payment. The comparable house that we used to establish this payment is located at 262 Fox Point Road, Newington, New Hampshire. In addition to the replacement housing payment, you may be eligible to receive reimbursement for closing costs, increased interest and moving costs."

At the time of the letter, the Pickering property was a comparable dwelling which was made available in accordance with the regulations. Thus, the letter complied with the ninety-day notice requirement. It is clear from the regulations that if comparable housing is not available at the time of the notice, alternative comparable housing must be located before the displacee may be forced to move. The regulations do not, however, require the State to ensure that the comparable dwelling named in the ninety-day notice be made decent, safe and sanitary at any cost.

■ In this case, upon learning that the Pickering property could not be made decent, safe and sanitary with the replacement housing payment determined by the DOT, the Matthews could not be forced to move at that time. Neither, however, was the State required to spend an amount three times its estimate to make the house decent, safe and sanitary. The regulations state that the board has "broad latitude in implementing" the provision for replacement housing of last resort, "but implementation shall be for reasonable cost." 24 C.F.R. § 24.404(c). The regulations specifically set forth construction of a new replacement dwelling as a method of providing replacement housing of last resort. *Id.* § 24.404(c)(1)(iii). We therefore uphold the appeals board finding affirming the DOT hearings examiner's ruling that the State may calculate a replacement housing payment based upon the construction of a new comparable home. To hold otherwise would force the State to inflate the replacement housing compensation amount based upon the selection of a comparable dwelling requiring an unreasonable amount of repair.

■ The plaintiffs' second contention is that the DOT is precluded by equitable estoppel from changing the designated replacement dwelling after the plaintiffs relied on the designation. The plaintiffs did not raise the issue of estoppel at the initial hearing, but did raise a form of estoppel, *governmental* estoppel, at the appeals board hearing. Upon questioning by one of the members of the appeals board regarding an element of estoppel, however, plaintiffs' counsel

stated: "I think there is a concept of Governmental Estoppel, and I likened it to this situation. But, I do not say that this is a Governmental Estoppel situation." By conceding that governmental estoppel is not applicable to this case, the plaintiff removed the issue from consideration by the appeals board. Therefore, neither the hearings examiner nor the appeals board considered this argument, and it would be improper for us to consider it now. *See Bisson v. University of New Hampshire*, 133 N.H. 353, 359–60, 578 A.2d 320, 325 (1990) (improper to consider argument on appeal that trial court did not have opportunity to consider); *see also Appeal of Seacoast Anti-Pollution League*, 126 N.H. 789, 792, 497 A.2d 847, 850 (1985) (trial forum should have full opportunity to consider issues in first instance).

■ Finally, the plaintiffs argue that the hearings examiner erred in considering whether the plaintiffs' house was a single or two-family dwelling. The plaintiffs failed to raise this issue in their motion for rehearing (as amended) or before the appeals board. Therefore, we will not consider it now. *See* RSA 21-L:18 (appeal to appeals board considered rehearing for purposes of RSA chapter 541); RSA 541:4 (court shall not consider on appeal grounds not set forth in motion for rehearing).

For the above reasons, we uphold the appeals board decision affirming the hearings examiner's award of replacement housing compensation to the plaintiffs.

*Affirmed.*

All concurred.