Robert A. HUPPELER, Edwin C. Magli and Ellwood Sandmire, Plaintiffs–Appellants,

v.

OSCAR MAYER FOODS CORPORA-TION, Plan Administrator, and Pension Plan No. 1, Defendants–Appellees.

No. 93–3765.

United States Court of Appeals, Seventh Circuit.

Argued May 13, 1994.

Decided Aug. 8, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 4, 1994.

John C. Talis (argued), Richard V. Gray-low, Lawton & Cates, Madison, WI, for Robert A. Huppeler, Edwin C. Magli and Ellwood Sandmire.

Donald K. Schott (argued), Erica M. Eisinger, Dana O'Brien, Quarles & Brady, Madison, WI, for Oscar Mayer Foods Corp. and Pension Plan No. 1.

Before CUDAHY, KANNE and ROVNER, Circuit Judges.

CUDAHY, Circuit Judge.

Robert Huppeler began working for Oscar Mayer in its Madison, Wisconsin plant in 1964. His job required that he run (and

---

work alongside) noisy machinery used in meat processing. After working for Oscar Mayer for more than twenty-five years, Huppeler's doctors told him in 1990 that he had suffered a 21.1 percent permanent partial bilateral hearing loss. He took early retirement in January 1992.

Under Wisconsin law, Huppeler was barred from bringing a tort action against Oscar Mayer; his exclusive remedy was the right to recover compensation under the state's Worker's Compensation Act. *See* Wis.Stat. § 102.03(2). He thus sought recovery before the Wisconsin Department of Industry, Labor and Human Relations, which on July 13, 1992 awarded him $6,562.62.

But in May 1993 Huppeler received a letter from the Employee Benefits Manager at Oscar Mayer, telling him that every dollar he received in workers' compensation benefits would be subtracted from his pension. He would therefore not receive his monthly pension benefits, which amounted to approximately $350 a month, for the next 19 months. All of this was pursuant to Pension Plan No. 1—which was negotiated between Oscar Mayer and Huppeler's union—and provided that pension benefits would be offset, dollar for dollar, from any workers' compensation award an employee might receive, save for payment for an injury for the loss of a body member. Despite the commonsense similarity between hearing loss and "loss of a body member," Huppeler does not contend that his loss of hearing falls within the plan's "loss of a body member" exception to the offset for workers' compensation benefits; there is no claim that the plan was improperly administered.

Edwin Magli and Ellwood Sandmire also worked at Oscar Mayer, and following their retirement found that they too had suffered permanent hearing loss. Neither filed for workers' compensation benefits, however, figuring that they had nothing to gain by it; whatever they received would just come out of their pensions. They, along with Huppeler, sued Oscar Mayer, claiming that the offset clause in the pension plan represents a forfeiture, and is therefore forbidden under the anti-forfeiture provision of the Employee Retirement Income Security Act of 1974

(ERISA), 29 U.S.C. § 1053(a). The district court entered summary judgment in Oscar Mayer's favor, and the plaintiffs appeal.

## I.

■ "The central problem to which ERISA is addressed is the loss of benefits previously promised." John H. Langbein & Bruce A. Wolk, *Pension and Employee Benefit Law* 82 (1990). ERISA does not concern itself with the *amount* of benefits promised. In negotiating the size of the pension on retirement, employers and employees are left free to agree to a large pension, a small pension or no pension. But whatever the size, once those benefits have "vested," ERISA does not allow the benefits to be "forfeited." "Each pension plan shall provide that an employee's rights to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age." 29 U.S.C. § 1053(a). The Supreme Court has accordingly noted that the primary motivating purpose of ERISA was to ensure that "if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it." *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 375, 100 S.Ct. 1723, 1733, 64 L.Ed.2d 354 (1980). Commentators have observed that "ERISA might easily have been titled the Pension Benefits Antiforfeiture Act." Langbein & Wolk, *Pension and Employee Benefit Law, supra*, at 83.

■ This aspect of ERISA—like much else in our nation's pension policy—is undeniably paternalistic, *see generally*, Deborah M. Weiss, *Paternalistic Pension Policy: Psychological Evidence and Economic Theory*, 58 U.Chi.L.Rev. 1275 (1991). The effect of ERISA's anti-forfeiture provision is to forbid an employee and an employer from contracting "for a pension plan whose benefits are made contingent beyond ERISA's permitted forfeiture periods." Langbein & Wolk, *Pension and Employee Benefit Law, supra*, at 91. The question presented in this case is one that has caused division among the various courts of appeals: whether offsetting pension benefits by workers' compensation

payments made to an employee, where the payment compensates for "bodily impairment" that the employee suffered, is forbidden by ERISA's anti-forfeiture provision.

## II.

Our examination of this question begins— and, according to Oscar Mayer, should end— with the Supreme Court's decision in *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). The *Alessi* Court addressed whether, generally speaking, offsetting the receipt of workers' compensation awards from an employee's pension benefit amounts to a forbidden forfeiture. The Court held that it does not, and therefore upheld the IRS regulations being challenged. Those regulations provide that "nonforfeitable rights are not considered to be forfeitable by reason of the fact that they may be reduced to take into account benefits which are provided under the Social Security Act or under any other Federal or State law and which are taken into account in determining plan benefits." 26 CFR § 1.411(a)–4(a). But some of the Court's reasoning suggested that this determination might turn on the nature of the workers' compensation award. The tension between the sweeping language in the regulations the Court upheld, and the more layered reasoning offered by the *Alessi* Court itself, has been the source of some confusion in the lower courts.

The plaintiffs in *Alessi* argued that any offset in pension benefits for a workers' compensation award was an impermissible forfeiture. In rejecting this contention, the Court noted that there exists a distinction between depriving a worker of vested benefits, and defining the content of the benefit that, once vested, cannot be forfeited. *Alessi*, 451 U.S. at 511, 101 S.Ct. at 1900. But this linguistic twist only goes so far—any contractual provision that called for the forfeiture of benefits could be described as defining the content of nonforfeitable benefits. The Court therefore probed further, attempting to discern whether Congress—in enacting ERISA—sought to nullify contractual language in pension plans providing for an offset for workers' compensation benefits.

### A

The Court found "particularly pertinent" the fact that Congress did not prohibit the use of a calculation method—known as "integration"—under which "benefit levels are determined by combining pension funds with other income streams available to the retired employees." *Id.* at 514, 101 S.Ct. at 1901. So if, for example, an employee's pension provided that upon his retirement he would receive 65 percent of his salary, and if he was entitled to social security benefits that amounted to 25 percent of his salary, under an "integrated" pension plan, the pension would pay only the differential, here 40 percent of the employee's salary.

The *Alessi* Court noted that ERISA did not forbid integration. Rather, in prohibiting only integration "based on increases in Social Security or Railroad Retirement benefits authorized after ERISA took effect," Congress "acknowledged and accepted [the general practice of integration], rather than [prohibited] it." *Id.* at 516, 101 S.Ct. at 1902.[1]

Because the rationale for allowing integration—"promoting a system of private pensions by giving employers avenues for cutting the cost of their pension obligations," 451 U.S. at 517, 101 S.Ct. at 1903—applies to all types of offsets to pension benefits, the

---

1. But integration based on "unreasonable projections" of an employee's social security benefits— rather than actual benefits—violates ERISA. *See Dameron v. Sinai Hosp. of Baltimore, Inc.*, 815 F.2d 975 (4th Cir.1987).

Note that integration of social security benefits will tend to favor more highly compensated employees. The purpose of integration is generally to ensure that total retirement income, pension benefits plus Social Security, replaces the same percentage of all employees' salary. But because Social Security will replace a greater percentage of pay for lower-paid employees, an integrated plan will provide these lower paid employees with lower pension benefits. While integration based on actual social security benefits does not violate ERISA's prohibition against discriminating in favor of highly compensated employees, the *Dameron* court concluded that integration based on "unreasonable projections" of social security benefits does violate this stricture. 815 F.2d at 979–80. *See* Barbara J. Coleman, *Primer on ERISA* 49 (4th ed. 1993).

Court hinted that by allowing integration Congress may have condoned all other offsets. But it stopped short of such a holding. "An argument could be advanced," the Court recognized, "that Congress approved integration of benefits only with the federal benefits expressly mentioned in the Act." *Id.* at 517, 101 S.Ct. at 1903. It therefore found the analogy to integration of Social Security benefits nondispositive, and looked further for evidence of Congress' intent regarding workers' compensation benefits.

## B

The Court therefore looked to the IRS rulings that predated ERISA that addressed what type of integration would be permissible in a "qualified pension plan." The Court considered these rulings a reliable indicator of Congress' intent because "when it enacted ERISA, Congress knew of the IRS rulings permitting integration and left them in effect."[2] *Alessi*, 451 U.S. at 519, 101 S.Ct. at 1904. These rulings, the Court said, "include workers' compensation offsets within the ambit of permissible integration." *Id.* at 520, 101 S.Ct. at 1904. But while Oscar Mayer would have us stop there, the Court went on to qualify this conclusion.

The IRS's pre-ERISA rulings, which focus on the prohibition on discrimination rather than forfeiture per se, the Court observed, "base their allowance of pension payment integration on three factors: the employer must contribute to the other benefit funds, these other funds must be designed for gen-

eral public use, and the benefits they supply must correspond to benefits available under the pension plan." *Id.* It is the third factor—that the collateral benefits must correspond with pension benefits—that proves problematic.

The *Alessi* Court explained that question further. "The IRS employed these [three] considerations in approving integration with workers' compensation benefits. In contrast, the IRS has disallowed offsets of pension benefits with damages recovered by an employee through a common-law action against the employer. The IRS also has not permitted integration with reimbursement for medical expenses or with fixed sums made for bodily impairment because such payments do not match up with any benefits available under a pension plan qualified under the Internal Revenue Code and ERISA." *Id.* at 520–21, 101 S.Ct. at 1904–05 (citing Rev.Rul. 69–421, Part 4(j), 1969–2 Cum.Bull. 72; Rev. Rul. 68–243, 1968–1 Cum.Bul. 157). And, the Court noted, the legislative history suggests that Congress, in enacting ERISA, "embraced such IRS rulings," albeit "[w]ithout speaking directly of its own rationale." *Id.* at 521, 101 S.Ct. at 1905. *See,* H.R.Conf. Rep. No. 93–1280, 93rd Cong.2d Sess., 277 (1974), U.S.Code Cong. & Admin.News, pp. 4639, 5038.

The implication of this is that Congress knew what the IRS was doing before ERISA, and this understanding—as reflected in the IRS's pre-ERISA rulings, was statuto-

---

**2.** Under ERISA, qualified pension plans receive favorable tax treatment. An employer can deduct its contributions to the pension trust in the year in which the contributions are made, the earnings on the trust's principal are not taxed, and the employee is not taxed until the benefits are distributed. But satisfaction of the anti-forfeiture principle is a statutory requirement for qualification. A qualified plan therefore must provide that "an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age." 26 U.S.C. § 411(a). This language mimics the anti-forfeiture language at issue here—that of 29 U.S.C. § 1053(a).

But even before ERISA, qualified pension plans received favorable tax treatment, and the IRS had promulgated regulations governing such plans. Those regulations of course pre-dated

ERISA's anti-forfeiture language, and were rather an interpretation of 26 U.S.C. § 401(a), which forbids discrimination in favor of company officers, shareholders, or highly compensated employees. While integration might be seen as discriminatory, *see* note 1, Section 401(a)(5), provides that a plan is not discriminatory because of differences in benefits "because of any retirement benefits created under State or Federal Law." And the IRS regulations interpreting that provision—the ones on which the *Alessi* court relied—said that a plan is not discriminatory by virtue of its integration with Social Security funds and other benefits publicly available. These are the regulations to which the Court turned after concluding that Congress, in enacting ERISA, knew of and did not venture to change the existing regulations, and therefore implicitly approved them.

rily enacted by the passage of ERISA.[3] But there is also another rationale reflected in the opinion, that of deference to agency interpretation. This latter rationale emerges from the Court's assertion (though relegated to a footnote) that "we must defer to the consistent agency position that is itself reasonable and consonant with the Act." *Id.* at 520–21 n. 16, 101 S.Ct. at 1904 n. 16. But despite this assertion, in its explication of the statute the Court does not place explicit reliance on the IRS regulations interpreting ERISA, the very regulations whose validity were being challenged in *Alessi* itself. *Alessi* is therefore subject to either of these two interpretations, both of which are a bit problematic.

The first interpretation is that the case is a straightforward statutory interpretation of ERISA's anti-forfeiture provision, and that the Court read that provision—in accordance with the IRS's pre–ERISA practice—to adopt some form of correlation rule. This correlation rule, in a rough sense, can be seen as a sensible attempt to avoid double-counting. Where collateral benefits "correspond to benefits available under the pension plan," allowing the employee to receive both the pension and the collateral benefits would let the employee collect twice. On the other hand, medical expenses and sums for "bodily

impairment" do not match up, would not represent double counting, and therefore cannot be integrated.[4] On this reading of *Alessi,* Congress, in enacting ERISA, adopted this rule. But the problem with reading *Alessi* this way is that the Court did not look to see whether the benefits at issue in the *Alessi* case itself represented wage replacement or bodily impairment. This would have been the logical next step had the opinion held that ERISA statutorily enacted the correlation rule.

Instead, the Court simply noted that one of the plans at issue does not offset deductions "for medical expenses or fixed payments for bodily impairment," and that the other plan, though "silent on this point," is "certainly subject to IRS regulation." *Id.* at 521 n. 17, 101 S.Ct. at 1905 n. 17. And recognizing that workers' compensation benefits could well be seen as analogous to tort judgments, the Court, in a footnote, ventured to explain why the IRS might choose to treat the two forms of compensation differently. The IRS, the Court explained, "may have concluded that workers' compensation is as much an income maintenance program, responding to wage loss, as it is remuneration for injury, and therefore it may be integrated with pension benefits to the advantage of the

3. The Court's reliance on the IRS's Rev.Rul. 78–178, 1978–1 Cum.Bul. 118, raises some interpretive difficulty. That ruling, like the other rulings to which the Court looked, is an interpretation of 26 CFR § 1.401–1, which in turn interprets § 401(a)(5) of the Internal Revenue Code. Section 401(a)(5) is the pre-ERISA provision of the tax code that forbids discrimination in qualified pension plans. But unlike the pre-ERISA interpretations, it cannot plausibly be contended that Congress—in enacting ERISA in 1974—implicitly approved of Rev.Rul. 78–178 (which of course *followed* ERISA's passage). But Rev.Rul. 78–178 is generally consistent with the IRS's pre-ERISA pronouncements, and we read the Court in *Alessi* to say that Congress approved of this general regime.

But further difficulty is introduced by the fact that Rev.Rul. 78–178 contains the broadest language setting out a "correlation rule," under which only benefits that "correspond to benefits available under the pension plan" may be integrated. "[T]he *benefits payable under State or Federal programs* because of sickness and maternity, and which include cash benefits and medical services, may not be used as an offset to pension plan benefits because such benefits may

not be provided under a qualified pension plan." Rev.Rul. 78–178, 1978–1 Cum.Bul. 118.

And matters are made perhaps more complicated still by the fact that the United States, in its *amicus* brief before the Supreme Court in *Alessi,* asserted that under Rev.Rul. 78–178, "to the extent that a workers' compensation award reimburses the worker for medical expenses or provides fixed payments for bodily impairment, the Commissioner does not permit such awards to be used to offset pension benefits because such awards may not be provided under a qualified pension plan." Brief of United States as amicus curiae at 22 n. 13, *Alessi,* 451 U.S. 504, 101 S.Ct. 1895 (Nos. 79–1943 and 80–193) (Feb. 5, 1981). Thus, argued the government, the "Commissioner's offset policy [does not] put an injured employee in a worse position than a healthy employee with comparable years of service under the pension plan." *Id.* at 22–23 n. 13.

4. But this principle holds true only in a general sense. For example, tort recoveries cannot be integrated, though part of the damages in a tort suit, wages the employee could not earn because his injury forced him to retire prematurely, will match up with pension benefits.

entire employee group." *Id.* at 520 n. 16, 101 S.Ct. at 1904 n. 16.

And further, the Court notes, "we must defer to the consistent agency position that is itself reasonable and consonant with the Act." *Id.* at 520–21 n. 16, 101 S.Ct. at 1904 n. 16. This remark points to a second possible interpretation of *Alessi,* that the Court simply deferred to the IRS's interpretation of ERISA. We infer—though it is perhaps unclear—that the "consistent agency position" that the Court is talking about is the one expressed at 26 C.F.R. § 1.411(a)—the interpretation of ERISA whose validity it was then considering. The argument for the "agency deference" reading of *Alessi* is strengthened further by the fact that ERISA expressly delegates to the Secretary of the Treasury the authority to prescribe regulations regarding "minimum vesting standards," 29 U.S.C. § 1202(c), out of which the anti-forfeiture requirement emerges. On the other hand, the *Alessi* Court makes no mention of this express delegation.

### III.

The courts of appeals have divided in figuring out what emerges from *Alessi.* But, interestingly, all of the courts have focused on the Court's interpretation of ERISA itself. None have thus far read *Alessi* simply to defer to the IRS's interpretation of an ambiguous statute.

But though all of the courts have thus far agreed that the central feature of *Alessi* is its discussion of what Congress intended in enacting ERISA (to leave in place the then-existing IRS regulations), they have divided over how to understand the Court's interpretation. This disagreement does not surprise us, given the difficulty that we, too, have had in understanding *Alessi*'s teachings.

On the one hand, the Court says that the background IRS rule when ERISA was adopted was that collateral benefits could be offset against pension benefits, as long as the collateral income "correlates" with pension benefits; and that Congress intended to embrace that background rule in enacting ERISA. On the other hand, in resolving the case before it, the Court did not ask whether or not the collateral benefits in that case correlated with pension benefits, saying only that in some circumstances such benefits can rationally be understood as correlating.

The Fourth and Sixth Circuits, when presented—after *Alessi*—with the question whether workers' compensation benefits could be offset, summarily said that they could be. *See PPG Industries v. Crews,* 902 F.2d 1148 (4th Cir.1990); *Kapuscinski v. Plan Administrator,* 658 F.2d 427 (6th Cir. 1981) (concluding that after *Alessi* it is "clear that ERISA allows GM, as administrator of the Pension Plan, to deduct any workers' compensation awards from its retirees' pensions pursuant to the Pension Plan"). Neither court, however, looked at the nature of the benefit, or examined the language in *Alessi* that discusses the correlation between the pension benefits and the collateral benefits.

The Second Circuit, when faced with this same question, went into somewhat greater depth. In *Reska v. Pension Plan of Bethlehem Steel Corp.,* 848 F.2d 372 (2d Cir.1988), the plaintiff argued that the Court in *Alessi* did not allow integration of all workers' compensation benefits, but only those in the nature of "wage replacement." Edward Reska, who had suffered a 20 percent hearing loss and who had received more than $3,000 in workers' compensation benefits, argued that his benefits could not be offset against his pension plan. But the court found that New York case law made clear that workers' compensation benefits were—in New York—intended to compensate for loss of "presumed or actual earning power." *Id.* at 375. Therefore, the court concluded that it "need not decide whether *Alessi* or relevant IRS rulings apply to *all* or only *some* workers' compensation awards." *Id.* The plaintiff was entitled to no relief even "assuming, *arguendo,* that *Alessi* only applies to workers' compensation awards 'in the nature of wage replacement'." *Id.*

Since *Alessi* only the Ninth Circuit has concluded that offsetting pension benefits for workers' compensation awards—where the award is for bodily impairment rather than wage replacement—amounts to a forbidden forfeiture. In *Employee Benefits Committee*

*v. Pascoe*, 679 F.2d 1319 (9th Cir.1982), the pensioners argued that—after *Alessi*—a district court was required to "determine which portion of [their] workers' compensation benefits constitute non-income replacement items, and thus are not subject to offset." *Id.* at 1321.

But the court in that case refused to remand the matter to the district court for such a determination, noting that under Hawaii law, *all* workers' compensation benefits were intended to serve as compensation for loss of earning power. Because all of the benefits at issue in that case therefore "matched up" with income replacement, a remand was unnecessary.[5] But in *Losada v. Golden Gate Disposal Co.*, 950 F.2d 1395 (9th Cir.1991), the court found that under California law workers' compensation represented *both* lost income and wage replacement, and that—since the plaintiff took normal retirement—his lost income was presumably negligible. Therefore, the court concluded that the "entire settlement award constitutes compensation for bodily impairment," and could not be offset against pension benefits. *Id.* at 1400.

## IV.

If we, like all of the courts before us, believed that the Court in *Alessi* decided the case based on its interpretation of ERISA, we would likely be inclined to follow the more thorough analysis offered by the Ninth Circuit.[6] But both approaches have serious drawbacks. The approach taken by the Fourth and Sixth Circuits ignores the *Alessi* Court's lengthy discussion of the correlation rule. On the other hand, if the Ninth Circuit is correct, the Supreme Court was remiss in *Alessi* for not examining the nature of the workers' compensation benefits at issue there. It also suggests—without saying so expressly—that the IRS regulations that the

Court affirmed in *Alessi* are invalid. Lower federal courts in our hierarchical judiciary should of course be loathe to reach a conclusion that carries such an implication.

All of this leads us to question the assumption made by all of the previous courts of appeals—that the result in *Alessi* rested primarily on the details of the Supreme Court's reading of the pre-ERISA IRS regulations. Alternatively, *Alessi* can be read to suggest that it is unclear exactly what Congress intended in enacting ERISA, but that in any case—so long as the IRS regulations interpreting the statute are reasonable—the court would "defer to the consistent agency position." *Alessi*, 451 U.S. at 520–21 n. 16, 101 S.Ct. at 1904 n. 16.

It may be unusual that what appears to be the holding of a Supreme Court opinion is not made clear until the end of a lengthy footnote. The "agency deference" view of *Alessi*, we should note, is perhaps colored by the lens of the Supreme Court's subsequent jurisprudence. In particular, this reading of *Alessi* becomes more compelling when that opinion is read in the light cast by the Court's landmark opinion in *Chevron, U.S.A. v. NRDC*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). That decision teaches that when "a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue." *Id.* at 842, 104 S.Ct. at 2781. If it has not, the "court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the courts is whether the agency's answer is based on a permissi-

5. The court had previously, in *Server v. Interpace Corp.*, 657 F.2d 1115 (9th Cir.1981), reversed a pre-*Alessi* district court opinion that forbade all offsets for workers' compensation benefits, and remanded the case to the district court to determine if the pension plan itself permitted such offsets.

6. We are less than certain why, under this approach, the characterization of the benefits as

either for "wage replacement" or "bodily impairment" should turn on how state law describes workers' compensation in general, rather than decided by the federal court in individual cases. The argument for case-by-case determination seems particularly powerful in light of ERISA's broad preemption of all state laws that "relate to any employee benefit plan." *See* 29 U.S.C. § 1144(a).

ble construction of the statute." *Id.* at 843, 104 S.Ct. at 2782.

In this case there is no doubt that the statute is ambiguous. ERISA speaks of "forfeiture," but otherwise tells us little. Moreover, ERISA expressly delegates interpretive authority to the Secretary of the Treasury. 29 U.S.C. § 1202(c). We therefore suspect, had *Alessi* come along in the post-*Chevron* world, it would have been decided along these lines. But it is of course our role faithfully to apply the Supreme Court's opinions as they are *in fact* written, and the specific teaching of *Alessi* surely takes precedence over the more general framework set out in *Chevron.*

There is a vigorous debate over whether a pre-*Chevron* judicial interpretation of an ambiguous statute can render the statute "unambiguous," and thereby limit the discretion of the relevant agency. *See* Thomas W. Merrill, *Judicial Deference to Executive Precedent,* 101 Yale L.J. 969 (1992); *Comment, Precedents Construing Statutes Administered By Federal Agencies After the* Chevron *Decision: What Gives?,* 60 U.Chi.L.Rev. 223 (1993). Perhaps a pre-*Chevron* decision that clarifies a statute, and that does not itself rest on principles of deference to agency interpretation, can render a statute "unambiguous" for *Chevron* purposes, thereby constraining the discretion of the responsible agency. *See generally, Maislin Industries, U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990).

But it is clear—as the division in the lower courts demonstrates—that *Alessi* (even if it is itself a construction of the statute, rather than a decision to defer) has not rendered ERISA crystalline. And in any event we believe *Alessi* is best understood as itself deferring to the IRS's interpretation of ERISA. We therefore follow suit, and do the same.

## V.

This conclusion renders the ultimate resolution here a reasonably simple matter. *Alessi* represents a decision to delegate interpretive authority to the IRS. The relevant IRS regulations—the same ones upheld in *Alessi*—say that "nonforfeitable rights are not considered to be forfeitable by reason of the fact that they may be reduced to take into account benefits which are provided under the Social Security Act or under any other Federal or State law and which are taken into account in determining plan benefits." *See* 26 CFR § 1.411(a)–4(a).

It is true that the IRS has at times spoken of (or hinted at) a "correlation rule." But the revenue rulings in which it has done so (Rev.Rul. 68–243, Rev.Rul. 69–421 & Rev. Rul. 78–178) are all interpretations of a *different* Treasury Regulation (published at 26 CFR § 1.401–1), which itself relates to the anti-discrimination requirement (in 26 U.S.C. § 401(a)), not the anti-forfeiture provisions (in 26 U.S.C. § 411 and 29 U.S.C. § 1053(a)).

The only occasion that we have discovered in which the IRS has suggested that the correlation rule governs "forfeitures" is the United States' amicus brief in *Alessi.* But a litigation position is not an "agency interpretation." This is especially true when the agency's formal and published interpretation contradicts this position.

The formal and published interpretation of ERISA, to which the IRS has held fast since its promulgation in 1977, *see* 42 Fed.Reg. 42318, 42326 (Aug. 23, 1977), makes clear that integration with benefits "under any ... State law" is permissible. 26 C.F.R. § 1.411(a)–4(a). Workers' compensation benefits undeniably fall within the sweep of this language.

According to these regulations, the provision in Oscar Mayer's pension plan, under which Huppeler's pension benefits are reduced a dollar for every dollar he receives in workers' compensation, does not represent an impermissible forfeiture. To the extent that this regulation is inconsistent with what the government represented—in its *amicus* brief in *Alessi*—to be agency practice, it is a matter to be taken up with the IRS. But our role is simply to follow *Alessi,* which has deferred to the IRS's interpretation of ERISA.

## VI.

This is a very harsh result. The plaintiffs have suffered permanent hearing loss, and

are entitled to no remedy. Matters are perhaps made even worse by the fact that there is some language—in the Supreme Court's opinion in *Alessi*, in some of the Treasury Regulations (particularly Rev.Rul. 78–178) and in Supreme Court briefs submitted by the United States government—indicating that precisely this result would *not* be reached. Moreover, the conclusion that we come to is hard to justify as a matter of either policy or economics. The correlation rule seems designed to prevent double-counting (by not allowing an employee to receive lost wages *both* in workers' compensation benefits and in his pension), which is obviously a sensible goal. But by permitting *all* offsets, we leave the employee who is injured to bear, by himself, the full cost of his injury. This strikes us as indefensible on a commonsense or rough justice basis.

Perhaps the only thing that can be said on behalf of this result is that it does give effect to the agreement reached between the company and the union in the collective bargaining process. That, and the fact that, at least by our lights, it gets the law right. The correlation rule, whatever its merits, does not appear in 26 C.F.R. § 1.411(a)–4(a), which is an authoritative interpretation of ERISA's anti-forfeiture provision. The judgment of the district court is therefore AFFIRMED.