Manchester Retirement Board
No. 94-434

APPEAL OF KEVIN G. BARRY & a.

(Board of Trustees of the City of Manchester Employees'
Contributory Retirement System)

July 11, 1996

*McDowell & Mekeel, P.A.*, of Manchester (*Robert K. Mekeel* on the brief and orally), for the petitioners.

*Sheehan Phinney Bass + Green, P.A.*, of Manchester (*Claudia C. Damon* on the brief and orally), for the respondent, Board of Trustees of the City of Manchester Employees' Contributory Retirement System.

THAYER, J. The petitioners, Kevin G. Barry and Marcel J. Gagnon, appeal pursuant to RSA chapter 541, *see* Laws 1973, 218:18, an order of the Board of Trustees of the City of Manchester Employees' Contributory Retirement System (retirement board) offsetting the entirety of their workers' compensation lump sum settlements against their disability pensions. We vacate and remand for a determination of the offset permissible in light of this opinion.

The facts are undisputed. The petitioners are former employees of the City of Manchester (city) who filed workers' compensation claims based on work-related injuries suffered by Mr. Barry in July 1991 and by Mr. Gagnon in April 1992. Agreements between the petitioners and the city providing for lump sum settlements of these claims, *see* RSA 281-A:37 (Supp. 1992) (amended 1993, 1994), were approved by the New Hampshire Department of Labor on June 7, 1993. The petitioners also applied to the City of Manchester Employees' Contributory Retirement System (retirement system), which granted work-related disability pensions to Mr. Barry on April 13, 1993, and to Mr. Gagnon on May 12, 1993.

On December 14, 1993, the retirement board voted to reduce the petitioners' disability pensions by the amount of one-half of their workers' compensation lump sum settlements. At that time the payout figures for the pensions had not been calculated. On January 11, 1994, the board voted to offset the full amount of the petitioners' lump sum settlements against their pensions.

On February 22, 1994, the retirement system notified Mr. Barry that he had been awarded a disability pension subject to an offset of the portion of his workers' compensation lump sum settlement itemized for temporary total disability, see RSA 281-A:28 (Supp. 1993), over a five-year period. On the same date, Mr. Gagnon was informed that he had been awarded a disability pension subject to an offset of the portion of his lump sum settlement itemized for permanent total disability, see RSA 281-A:28-a (Supp. 1993), over a five-year period. The petitioners moved for a rehearing. On May 24, 1994, the board ruled that the entire amounts of the petitioners' lump sum settlements, including amounts itemized for Mr. Barry's whole person permanent impairment, see RSA 281-A:32, IX (Supp. 1995), and Mr. Gagnon's attorney's fees, would be offset. This appeal followed.

Manchester's retirement system originated in Laws 1973, chapter 218, effective January 1, 1974. Chapter 218 as enacted and as subsequently amended neither authorizes nor prohibits the board from reducing disability pensions by amounts received as workers' compensation benefits. In a referendum held in November 1985, Manchester voters amended section 8.09 of the city charter to require the reduction of chapter 218 disability pension benefits by the amount of any workers' compensation benefits paid for the same disability. Section 8.09 as amended states in pertinent part:

> Any amounts which may be paid or payable to, or on account of, any member or retired member on account of any disability to which the city has made contributions under the provisions of any workers' compensation or similar law or plan shall be reduced against or from the city pension on account of the same disability.

In its May 24, 1994, orders, the retirement board interpreted section 8.09 as mandating an offset of the entire amount of the petitioners' workers' compensation lump sum settlements.

On appeal, the petitioners argue: (1) the retirement board lacks authority to reduce a disability pension based on a workers' compensation lump sum settlement; (2) the board acted "unreasonably, arbitrarily and unlawfully" in disregarding its December 1993 vote requiring an offset of only half the lump sum amount; and (3)

offsetting portions of the workers' compensation lump sum settlements not properly analogous to disability pensions "unreasonably enriches the city of Manchester at the petitioners' expense."

We will reverse an order of the retirement board only if the board committed an error of law or if "the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." RSA 541:13 (1974). The board's findings of fact are deemed *prima facie* lawful and reasonable. *Id.*

The petitioners first argue that chapter 218 of Laws 1973 does not authorize the city to amend the retirement system by charter amendment process. Therefore, the 1985 amendment to section 8.09 of the city charter requiring the offset is invalid, and the board exceeded its legitimate authority in ordering the offset.

RSA 541:4 (1974) requires that a motion for rehearing "set forth fully every ground upon which it is claimed that the decision or order complained of is unlawful or unreasonable." Any ground not set forth in the motion for rehearing is not reviewable on appeal, absent good cause shown to specify additional grounds. RSA 541:4. Because the petitioners failed to contest the validity of section 8.09 of the city charter in their motions for rehearing, and because they have not shown good cause to justify this failure, we hold that this claim was not properly preserved for purposes of this appeal. Accordingly, we will not consider it. *See Appeal of Matthews*, 136 N.H. 221, 226, 614 A.2d 1061, 1064 (1992).

■■ The petitioners' second argument is that the board acted "unreasonably, arbitrarily and unlawfully" in disregarding its December 1993 vote requiring an offset of only half the lump sum settlements. The retirement board responds that the January 1994 vote requiring an offset of the full amounts merely recognized that the December vote misapplied the law. The board contends that it may correct legal errors, and that it has a fiduciary obligation to adhere to the benefit plan and to protect the interests of the beneficiaries of the system.

The retirement system as created by Laws 1973, chapter 218 and subsequently modified does not specifically provide a method by which the board can alter or repeal prior orders. Section 218:2, V, however, states that

> [t]he retirement board shall determine the eligibility of any employee and his rights, and the rights of the city under this act; shall make bylaws and regulations not inconsistent with the law for administration of this act; and shall do all things necessary and proper toward carrying out the purposes for which the retirement system is created.

Section 14.07 of the retirement board's bylaws, adopted in May 1993, provides that "[a]ny Board member recorded as having voted with the prevailing side on a question may move to reconsider the question at any time." Although not styled as a "motion to reconsider," the January 1994 vote requiring a full offset was taken on the motion of a board member who had previously voted for the partial offset. We hold that, on the facts of this case, the retirement board's decision to reconsider its earlier order was within the scope of the board's authority and was not unjust or unreasonable. *See* RSA 541:13; *Hardy v. State*, 122 N.H. 587, 590, 448 A.2d 382, 384 (1982).

Finally, the petitioners contend that the offset impermissibly includes components of their workers' compensation lump sum settlements that are not comparable to disability pension benefits, including amounts representing permanent partial impairment, vocational rehabilitation, attorney's fees, and the value attributable to the petitioners' resignation from city employment. Although the petitioners invoke the State and Federal Constitutions to support this claim, we need not reach their constitutional arguments because we decide this issue on nonconstitutional grounds by interpreting section 8.09. *See State v. Hodgkiss*, 132 N.H. 376, 379, 565 A.2d 1059, 1061 (1989).

The language of section 8.09 is tortuous. It requires that "[a]ny amounts" paid to a member of the system "on account of any disability to which the city has made contributions under the provisions of any workers' compensation . . . law or plan shall be reduced against or from the city pension on account of the same disability." In its May 1994 letter to Mr. Barry, the retirement board attempted a literal unpacking of this language and declared:

> This section of the City Charter requires that "any amounts" paid to a disabled member or retired member as workers' compensation benefits "shall be reduced against or from the City pension on account of the same disability . . . ."[] A lump-sum settlement of a workers' compensation claim is "any amount" paid as workers' compensation benefits.
>
> . . . .
>
> . . . The City Charter does not exempt any workers' compensation benefits from being offset. "Any amounts" received must be offset.

The flaw in the board's reasoning is demonstrated by the fact that section 2.4.4 of its own administrative rules, adopted five months

earlier on December 14, 1993, provides that offsets "shall not include workers' compensation benefits relating to medical expenses." Although medical benefits are specifically excluded from lump sum settlements under the workers' compensation statute, *see* RSA 281-A:37, II (Supp. 1995), and although the parties apparently agree that the administrative rules adopted in December 1993 do not apply to the petitioners, the fact remains that not even the retirement board interprets the phrase "any amounts" in section 8.09 of the city charter to include all workers' compensation awards.

The record before us does not establish the precise reasons that led the city to adopt the charter amendment. We believe, however, and the retirement board in its brief agrees, that section 8.09 is most plausibly read as an attempt to prevent the duplication of disability benefits that would otherwise result in payments in excess of predisability earnings. *Cf. Richardson v. Belcher*, 404 U.S. 78, 81–83 (1971) (reduction in federal social security benefits based on workers' compensation payments is rationally related to purpose of preventing duplication of benefits and does not offend due process); *Davidson v. Sullivan*, 942 F.2d 90, 92 (1st Cir. 1991) (social security offset provision "enacted to prevent the duplication of disability benefits that had resulted in payments in excess of predisability earnings"); *see generally* 4 A. LARSON & L. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 97.00 (1996) ("duplication of benefits from different parts of the [wage-loss protection] system should not ordinarily be allowed").

Under this interpretation, the critical language in section 8.09 is not the words "any amounts," but instead the limitation on the offset to amounts received "on account of any *disability*." (Emphasis added.) We thus read section 8.09 as embodying the "correlation rule," which requires that disability pensions be offset by the amount of certain duplicative payments. "This correlation rule, in a rough sense, can be seen as a sensible attempt to avoid double counting. Where collateral benefits correspond to benefits available under the pension plan, allowing the employee to receive both the pension and the collateral benefits would let the employee collect twice." *Huppeler v. Oscar Mayer Foods Corp.*, 32 F.3d 245, 249 (7th Cir. 1994) (quotation omitted), *cert. denied*, 115 S. Ct. 1253 (1995). The converse of the correlation rule is that collateral benefits that do not match up with pension benefits, and hence do not represent double recovery, cannot be offset. *Id.; cf.* 60A AM. JUR. 2D *Pensions and Retirement Funds* § 449 (1988) ("Benefits under a qualified plan may not be offset by benefits that are not the type that may be provided under a qualified plan.").

■ We hold that the correct test for computing the offset required under section 8.09 of the Manchester city charter is whether the benefit in question, in this case any of the components of the petitioners' workers' compensation lump sum settlements, is equivalent to, and hence duplicative of, the type of benefit represented by the disability pension. *See generally* 4 LARSON, *supra* § 97.40. If the benefits do correspond, thereby resulting in double counting, the amount in question must be offset, provided the other requirements of section 8.09 are met. If the benefits do not correspond, the amount in question cannot be offset.

Because the retirement board erroneously interpreted section 8.09 to require an offset of the full amounts of the petitioners' workers' compensation lump sum settlements, regardless of whether the benefits in question are duplicative of the disability pensions, we vacate the board's order and remand for a determination of the offset permissible in light of this opinion.

Although it is possible to read the petitioners' brief as asserting under the State and Federal Constitutions that the offset of even duplicative workers' compensation awards constitutes a taking without just compensation or a violation of substantive due process rights, these claims were made, if at all, only in passing, without any development or citation to authority. Accordingly, we do not address them. *See D. W. Clark Road Equip., Inc. v. Murray Walter, Inc.*, 124 N.H. 281, 285, 469 A.2d 1326, 1329 (1983).

Finally, we note that the question of whether the retirement board is bound by the specific allotments contained in the petitioners' workers' compensation lump sum settlements, *see, e.g., Day v. N.H. Retirement System*, 138 N.H. 120, 125–26, 635 A.2d 493, 496–97 (1993); *Harkins v. Contributory Retirement App. Bd.*, 446 N.E.2d 739, 739–40 (Mass. App. Ct. 1983), is not before the court. We express no opinion on this matter.

*Vacated and remanded.*

BRODERICK, J., did not sit; the others concurred.