Manchester Retirement Board
No. 97-165

## APPEAL OF KEVIN G. BARRY & a.

(Board of Trustees of the City of Manchester Employees'
Contributory Retirement System)

November 30, 1998

*Robert K. Mekeel, P.A.*, of Concord (*Robert K. Mekeel* on the brief and orally), for the petitioners.

*Sheehan Phinney Bass + Green, P.A.*, of Manchester (*Claudia C. Damon* on the brief and orally), for the respondent.

*Thomas R. Clark*, city solicitor, and *Thomas I. Arnold, III*, assistant city solicitor, of Manchester (*Mr. Clark* and *Mr. Arnold* on the brief, and *Mr. Arnold* orally), for the City of Manchester, as *amicus curiae*.

BROCK, C.J. The petitioners, Kevin G. Barry and Marcel J. Gagnon, appeal an order of the Board of Trustees of the City of Manchester Employees' Contributory Retirement System (retirement board) offsetting their workers' compensation lump sum settlements against their retirement disability pensions. We reverse and remand.

This is the second time this case has come before us. *See Appeal of Barry*, 141 N.H. 170, 681 A.2d 75 (1996). In the first appeal, the petitioners argued that the City of Manchester (city) was not authorized to modify the retirement system by amending the city charter. *Id.* at 173, 681 A.2d at 77. In particular, the petitioners contended that the city improperly adopted section 8.09 of the Manchester City Charter, which states in part:

> Any amounts which may be paid or payable to, or on account of, any member or retired member on account of any disability to which the city has made contributions under the provisions of any workers' compensation or similar law or plan shall be reduced against or from the city pension on account of the same disability.

We did not address this argument, however, because the petitioners failed to raise the issue in a motion for rehearing below, and thus failed to comply with the requirements of RSA 541:4 (1997). *See Appeal of Barry*, 141 N.H. at 173, 681 A.2d at 77.

Alternatively, the petitioners argued that the offsets included portions of their lump sum settlements which were not comparable to their disability pension benefits. *Id.* at 174, 681 A.2d at 77. We enunciated the correlation rule to determine what portion of the petitioners' workers' compensation settlements, if any, could be offset from their disability pension benefits. *Id.* at 175, 681 A.2d at 78. Accordingly, we vacated the retirement board's order and remanded for a determination of the permissible offsets in accordance with the correlation rule. *Id.* at 176, 681 A.2d at 79.

On remand, the retirement board offset the entire amount of petitioner Gagnon's workers' compensation lump sum settlement, and $27,295 of petitioner Barry's $42,000 workers' compensation lump sum settlement. Although argued by the petitioners, the retirement board did not consider whether section 8.09 was improperly adopted, reading our decision in *Appeal of Barry* as dispositive of that issue. The petitioners filed a motion for rehearing, this time properly raising the issue therein. *See* RSA 541:4. The retirement board denied the motion and this appeal ensued.

On appeal, the petitioners argue that section 8.09 is invalid because the city had no authority to adopt it by charter amendment. We agree. Because this issue is dispositive of the appeal, we need not address the petitioners' other arguments.

We will not set aside the retirement board's order unless it is contrary to law or we find by a clear preponderance of the evidence that the order is unjust or unreasonable. RSA 541:13 (1997); *see Appeal of AFSCME Local 3657*, 141 N.H. 291, 293, 681 A.2d 100, 102 (1996).

The petitioners contend that the retirement board is not authorized to offset their workers' compensation settlements from their disability pensions. The petitioners argue that the retirement system as enacted by the legislature, *see* Laws 1973, ch. 218, and subsequently amended by the legislature, *see* Laws 1976, ch. 24, does not authorize a workers' compensation offset. While the retirement system and its subsequent amendment were approved by a city referendum pursuant to these session laws, the petitioners argue that section 8.09 of the city charter was unlawfully adopted by a city referendum without legislative authority. Because section 8.09 is invalid, the petitioners assert that the retirement board exceeded its authority when it offset their workers' compensation benefits.

The retirement board first responds that the scope of remand in *Appeal of Barry* was limited to the determination of permissible offsets in light of the correlation rule. The board contends that because we did not consider the validity of section 8.09 on the initial appeal, it is too late to raise the issue now. We disagree. The question of the board's authority to act pursuant to our order of remand became viable when properly raised. In this appeal, the petitioners have complied with the procedural requirements of RSA 541:4, and therefore the issue is properly before us. *Cf. State v. Tselios*, 134 N.H. 405, 407, 593 A.2d 243, 245 (1991) (even though issue was not raised at the earliest possible time, issue was preserved for appellate review where tribunal presented with opportunity to correct its own error).

On the merits, the retirement board contends that the retirement plan relates to a governmental process, in other words, a form of government. The board argues that the retirement plan became part of the city government when chapter 218 was adopted by referendum. Based on these assertions, the board argues that Part I, Article 39 of the New Hampshire Constitution and RSA chapter 49-B authorize the city to amend the retirement system because it is part of the city charter, its form of government.

The retirement board's brief does not identify the specific section of RSA chapter 49-B that it contends grants authority to the city to amend the retirement plan. We conclude that the board, by arguing that the retirement plan is a form of government, is relying on RSA 49-B:2. Although RSA 49-B:2 (Supp. 1985) has been amended in 1988 and 1991, we consider the version in effect at the time section 8.09 was adopted. RSA 49-B:2 provided:

Scope of Authorization. Any incorporated city or town, regardless of population, shall be entitled to exercise the home rule powers granted by article 39, part first, of the New Hampshire constitution, through this chapter, to create a charter commission and present to its inhabitants by referendum a municipal charter, which may establish any one of the following generally-described *forms of municipal government* as utilized in the New England states:

  I. Board of selectmen — town meeting.
  II. Mayor — board of aldermen or mayor — council.
  III. City council — city manager.
  IV. Town council — town manager, with or without budgetary town meeting.

V. Elected first selectman — board of selectman — town meeting.

While *limited to the adoption of one of the above-described basic forms of government*, the voters of a municipality may adopt a charter which, in their opinion, specifically meets the needs of their municipality as to such matters of local concern as number of elected officials; at-large or district representation; manner of filling vacancies; powers of nomination, appointment and confirmation; and terms of office.

(Emphasis added.) The flaw in this argument is that RSA 49-B:2 clearly limits the forms of government a municipality may choose, rather than *grants* a municipality unbridled authority to amend its charter.

If the board is relying on the legislative purpose of RSA chapter 49-B (Supp. 1985) (amended 1988, 1991, 1992, 1993, 1995), its reliance is misplaced. In *Girard v. Town of Allenstown*, 121 N.H. 268, 428 A.2d 488 (1981), we recognized the long-established principle that "towns are but subdivisions of the State and have only the powers the State grants to them." *Id.* at 270, 428 A.2d at 489. We stated that the purpose of RSA chapter 49-B was "to implement the home rule powers granted to municipalities by article 39, part first, of the constitution of the State of New Hampshire." *Id.* at 272, 428 A.2d at 491 (quotation omitted). This grant of power, however, "in no way provides or suggests that the towns, cities or other subdivisions of this State should have the right to exercise supreme legislative authority." *Id.*

■■ Here, the retirement board argues that RSA chapter 49-B grants the city authority to amend its retirement system because it is part of the city's form of government. As we held in *Girard*, RSA chapter 49-B was "intended only to provide a statutory framework by which the cities and towns may amend their *actual* form of government and that [RSA chapter 49-B] grants only the power necessary to carry out such changes." *Id.* at 272-73, 428 A.2d at 491 (emphasis added). We decline to interpret RSA chapter 49-B so broadly as to grant municipalities "the right to exercise supreme legislative authority." *Id.* at 272, 428 A.2d at 491. To adopt this view would result in the "total abdication and delegation of the legislative authority" and would "raise serious constitutional questions." *Id.* at 272, 428 A.2d at 490. Section 8.09 of the Manchester City Charter is therefore invalid as an unlawful amendment to the city retirement

system. Hence, we conclude that the retirement board acted in excess of its authority when it offset the petitioners' workers' compensation benefits. Accordingly, we reverse the retirement board's order and remand this case for a determination of the petitioners' disability pension benefits.

*Reversed and remanded.*

All concurred.