Grafton
No. 81-273

## WILLIAM B. HARRIMAN & a.

### v.

## CITY OF LEBANON & a.

May 24, 1982

*McNamara & Larsen P.A.*, of Lebanon (*Mark A. Larsen* on the brief and orally), for the plaintiffs.

*Decato & Cirone P.A.*, of Lebanon (*R. Peter Decato* on the brief and orally), for the defendants.

PER CURIAM. This is an interlocutory transfer by the Superior Court (*Johnson*, J.) of questions of law arising under RSA ch. 49-B (Supp. 1981), which became effective August 14, 1979. The plaintiffs have attempted to establish initiative and referendum in Lebanon by amending their city charter in accordance with RSA ch. 49-B (Supp. 1981), which allows voters to propose charter amendments by petition. The principal question is whether the charter of the City of Lebanon, a city council-city manager charter granted by the legislature and approved on July 19, 1957 (Laws 1957, ch. 419), can be so amended.

The plaintiffs proposed an amendment to the Lebanon city charter which would allow citizen initiative and referendum. They filed their petition, signed by approximately 900 voters of the city, with the city clerk on or around July 14, 1980. The city clerk, on August 1, 1980, signed a certificate of sufficiency to the effect that the signatures of registered voters on the petition appeared to be

sufficient in number and that the petition had been filed on a timely basis. *See* RSA 49-B:5 II, IV (Supp. 1981).

The plaintiffs' proposed amendment to the municipal charter provided:

> " 'Shall the City of Lebanon amend Chapter 419:23 of its charter to add Section 419:23a to provide for citizen initiative?' If this amendment passes, Chapter 419:23 will include 419:23a which will read: 419:23a Citizen Initiative. Citizens may propose a measure with an initiative petition signed by qualified voters equal in number to ten percent of the votes cast in the last gubernatorial election. When said petition is complete, as certified by the city clerk to have met the above requirements, said proposed measure, shall be submitted to the City Council requesting the City Council to pass proposed measure without alteration if said proposed measure be not passed without alteration within twenty days after the date of the clerk's certification, then such proposed measure without alteration shall be submitted by the City Council to the vote of qualified voters at the next municipal election. If a majority of the qualified voters voting on any proposed measure, and which falls within the lawful rights and powers of the city, shall vote in favor thereof, same shall thereafter go into effect on the first day of the next succeeding municipal year."

The plaintiffs' attorney on their behalf provided the city council with an opinion that the proposed amendment was "not in conflict with the general laws or the constitution." *See* RSA 49-B:5 IV(b) (Supp. 1981). The defendants' attorney provided the city council with a contrary opinion wherein he maintained that the proposed amendment violated the general laws of the State and was void because of overbreadth and vagueness.

The plaintiffs, seeking a declaration of the legal sufficiency of the proposed charter amendment, filed a petition for declaratory relief pursuant to RSA 49-B:10 II (Supp. 1981), and gave notice to all necessary parties. The attorney general never formally entered an appearance in the case and notified the trial court by letter that his office took no position on the matter. The trial court found that "a major and serious question of law exists which should be decided by the New Hampshire Supreme Court." The court transferred the issue of law, without ruling, to this court under RSA 491:17.

A multiplicity of pleadings were filed and orders issued between

the filing of the plaintiffs' original petition for declaratory relief on September 11, 1980, and the transfer to this court on May 13, 1981. Among the exhibits filed with this court was an updated charter of the City of Lebanon. It revealed that an amendment to the original charter providing for "Initiative and Referenda" (419:23a) was adopted on March 10, 1981, to become effective January 1, 1982. The newly adopted amendment provided in pertinent part:

> "Initiative petitions shall be limited in subject matter to matters involving legislation, to matters relating to broad policy issues, and in general, to matters within the exclusive province of the City Council. . . . Initiative petitions shall not be accepted . . . if they relate to matters within the exclusive province of the City Manager or if they fall within the administrative authority of the City Manager. . . . All questions submitted shall be of an advisory nature only. That is, passage of a vote shall not compel the council to take any action or forbid them to do so, but shall be advisory only."

*The parties did not advert to this amendment in their briefs or oral arguments.* We have considered whether it rendered the transferred issue moot. The question of mootness is one of convenience and discretion and is not subject to hard-and-fast rules. *Silva v. Botsch*, 120 N.H. 600, 601, 420 A.2d 301, 301 (1980). The transferred questions involve the home-rule powers granted to municipalities by article 39, part 1 of our State Constitution. We believe that we should proceed to consider these legal issues because they are of sufficient public interest. *See Proctor v. Butler*, 117 N.H. 927, 930, 380 A.2d 673, 674–75 (1977).

In 1966, article 39 was added to part 1 of our State Constitution. It reads as follows:

> "No law changing the charter or form of government of a particular city or town shall be enacted by the legislature except to become effective upon the approval of the voters of such city or town upon a referendum to be provided for in said law.
>
> The legislature may by general law authorize cities and towns to adopt or amend their charters or forms of government in any way which is not in conflict with general law, provided that such charters or amendments shall become effective only upon the approval of the voters of each such city or town on a referendum."

■ The first paragraph of article 39 deals with alterations of the charter of a city or town by the legislature; the legislature retains the power to confer additional powers upon a particular municipality to be exercised under its existing charter. *Sedgewick v. City of Dover*, 122 N.H. 193, 197, 444 A.2d 490, 492 (1982); *Opinion of the Justices*, 112 N.H. 42, 46, 288 A.2d 697, 700 (1972); *see also Opinion of the Justices*, 111 N.H. 142, 145, 276 A.2d 479, 480 (1971).

■■ A constitutional provision such as that in the *second paragraph* of said article 39, under which "[t]he legislature may by general law authorize cities and towns *to adopt or amend their charters or forms of government* in any way which is not in conflict with general law," is not self-executing and does not become operative until the enactment of legislation setting out the method of exercising such home-rule powers. *See* N.H. CONST. pt. 1, art. 39 (emphasis added); *see* 16 C.J.S. *Constitutional Law* § 53, at 159. This court has held recently that RSA ch. 49-B (Supp. 1981) provides the statutory framework through which cities and towns may amend their actual forms of government, and grants them the power necessary to carry out such changes. *Girard v. Town of Allenstown*, 121 N.H. 268, 272–73, 428 A.2d 488, 491 (1981).

This interpretation is consonant with what Representative Beverly A. Gage, co-sponsor of House Bill No. 292 (now RSA ch. 49-B (Supp. 1981)), stated were its intended purposes:

> "It finally enables the people in all cities and towns to exercise their constitutional rights granted under Article 39 to adopt their own form of government charter irrespective of the population. It specifies a certain particular process which must be followed for charter adoption, revision or amendment, which process is in full control of the people at the local level which follows the requirements of Article 39."

Senate Executive Department Committee Hearing, April 10, 1979.

When article 39 was proposed as a constitutional amendment at the November 9, 1966 election, the voters' guide said the following with regard to the second paragraph of article 39: "[T]his provision will [not] affect special acts which do not literally change the charter or forms of government. . . . " RSA 49-B:1 (Supp. 1981) states specifically that the "purpose of this chapter is to implement the home rule powers granted to municipalities by article 39, part first, of the constitution of the state of New Hampshire."

■ ■ Furthermore, this court recently held that:

"[T]his provision of our Constitution [pt. 1, art. 39] in no way provides or suggests that the towns, cities or other subdivisions of this State should have the right to exercise *supreme legislative authority*. Accordingly, we hold that RSA ch. 49-B (Supp. 1979) was intended only to provide a statutory framework by which the cities and towns may amend their actual form of government and . . . grants only the power necessary to carry out such changes."

*Girard v. Town of Allenstown*, 121 N.H. at 272–73, 428 A.2d at 491 (emphasis added). We now turn to the provisions of RSA ch. 49-B (Supp. 1981) and analyze them in the light of this background.

RSA 49-B:2 (Supp. 1981) provides that the home-rule powers granted by the New Hampshire Constitution are to be exercised under one of the five forms of municipal government as utilized in the *six New England states*. These forms of government are:

"I. Board of selectmen-town meeting.
II. Mayor-board of aldermen or mayor-council.
III. City council-city manager.
IV. Town council-town manager . . .
 V. Elected first selectman-board of selectmen-town meeting."

Lebanon has one of the authorized forms of municipal government, that is, a "city council-city manager" charter.

The State Constitution, by virtue of article 39, part 1, has granted the legislature the power to authorize *municipalities* to *amend* their *charters* in any way which is not in conflict with general law. These home rule powers must be exercised in accordance with RSA 49-B:5 and :6 (Supp. 1981). Home-rule statutes confer substantial power upon home-rule cities. RSA 49-B:5 II (Supp. 1981) specifically provides that twenty percent of the voters in a given municipality may initiate a petition to amend a charter. A proposed amendment to a municipal charter must be placed on the ballot if the proponents comply with RSA 49-B:5 and :6 (Supp. 1981). The record indicates that the plaintiffs followed this charter amendment procedure.

■ Nothing in the statute indicates that the city council is empowered to keep an initiative petition off the ballot because it believes the proposal is unconstitutional or violates State laws. Rather, the municipal officers or charter committee must submit

"a written opinion by an attorney admitted to the bar of this state that the proposed amendment is not in conflict with the general laws or the constitution." RSA 49-B:5 IV(b) (Supp. 1981). The plaintiffs complied in every respect with the statute; therefore their proposed charter amendment should have been submitted to the voters.

The amendment to the city charter proposed by the plaintiffs was an amendment in part providing for a "citizen initiative" petition by which a required number of voters would submit a measure to the city council for passage or rejection by the city council without alteration. Upon failure to adopt the measure, however, the council is required to submit the measure as a "referendum" to the voters at the next municipal election, to become law if adopted and if it falls within the lawful rights and powers of the city.

The defendant argues that the process of initiative or referendum cannot exist in a municipality with a city council-city manager form of government. We disagree. Binding initiative does not run afoul of RSA ch. 47 or RSA 44:3. When the proper procedures for amending a charter are followed, as they were in this case, a charter providing for citizen initiative or referendum can exist in a municipality with a city council-city manager form of government as long as the initiative petition neither intrudes into matters reserved for the city council under RSA ch. 47, nor contravenes the general laws or constitution. For instance, the voters could not by initiative or referendum make legal in one city what the criminal code makes illegal in this State. "Home rule" does not mean that laws of general application could be so nullified.

Likewise, if the proposed charter amendment, providing for implementation of citizen initiative and referendum, is adopted, the voters could not utilize it to amend or alter the city charter. We reiterate that all charter alterations and amendments must be adopted in accordance with RSA ch. 49-B (Supp. 1981).

Accordingly, we hold that the plaintiffs' charter amendment, which was proposed in accordance with RSA 49-B:5 and :6 (Supp. 1981), may be placed on the ballot.

*Remanded.*