Sullivan
No. 91-402

CITY OF CLAREMONT

v.

PAUL CRAIGUE & a.

May 5, 1992

*Jackson & Yazinski,* of Claremont (*John J. Yazinski* on the brief), by brief for the petitioner.

*James R. Laffan,* of Lebanon, by brief for the respondents.

JOHNSON, J.   The respondents, five registered voters of the City of Claremont, appeal the Superior Court's (*Morrill,* J.) order granting the City of Claremont's petition for declaratory judgment. The court declared that proposed changes to the Claremont city charter, which a majority of Claremont's voters approved, are invalid because they are inconsistent with State statutes. For the reasons that follow, we affirm.

Since the voters of the City of Claremont adopted a city charter in 1947, Claremont has had a city council-city manager form of government. The Claremont City Council has always prepared and adopted the city's budget. In 1990, the respondents, displeased with increasing city budgets, proposed the following three changes to the city charter:

"41. BUDGET MEETINGS. PUBLIC MEETINGS ON THE BUDGET SHALL BE HELD BEFORE ITS FINAL ADOPTION BY THE VOTERS AT SUCH TIME AND PLACE AS THE COUNCIL SHALL DIRECT, AND NOTICE OF SUCH PUBLIC MEETING TOGETHER WITH A COPY OF THE BUDGET AS SUBMITTED SHALL BE PUBLISHED AT LEAST TWO WEEKS IN ADVANCE BY THE CITY CLERK.

42. DATE OF FINAL ADOPTION. THE BUDGET SHALL BE FINALLY ADOPTED BY A MAJORITY VOTE OF THE VOTERS AND FINALLY ADOPTED NOT LATER THAN THE LAST DAY OF THE SECOND

MONTH OF THE FISCAL YEAR. SHOULD THE COUNCIL TAKE NO FINAL ACTION ON OR PRIOR TO SUCH DAY, THE BUDGET AS SUBMITTED SHALL NOT EXCEED THE PREVIOUS YEARS BUDGET LESS FIVE PERCENT AND FINALLY ADOPTED BY THE PEOPLE.

43. APPROPRIATIONS AFTER BUDGET IS ADOPTED. NO APPROPRIATION SHALL BE MADE FOR ANY PURPOSE NOT INCLUDED IN THE ANNUAL BUDGET AS ADOPTED UNLESS VOTED BY THE VOTERS AFTER A PUBLIC MEETING HELD TO DISCUSS SAID APPROPRIATION. THE VOTERS SHALL BY RESOLUTION DESIGNATE THE SOURCE OF ANY MONEY SO APPROPRIATED."

A majority of Claremont's voters voted in favor of the proposed changes in November 1990. Subsequently, the members of the Claremont City Council petitioned the superior court for a judgment declaring the changes invalid, on the grounds that the proposed changes are in derogation of RSA chapter 49-B and intrude upon powers reserved for city councils. In July 1991, the court issued an order declaring the changes invalid because "the process of government put forth by the defendants does not comport with the modes of government envisioned by the legislature." We agree.

RSA 49-B:2 sets out the scope of a municipality's home rule powers.

"49-B:2 Scope of Authorization.

I. Any incorporated town or city, regardless of population, shall be entitled to exercise the home rule powers recognized by article 39, part first, of the New Hampshire constitution, and implemented through this chapter, to create a charter commission and to present to its inhabitants by referendum a municipal charter, in which they may establish either a town or city government.

II. If the proposed charter denominates the municipality as a town, the charter shall designate one of the following forms of town government:
   (a) Board of selectmen—town meeting.
   (b) Town council—town manager and mayor, with or without budgetary town meeting.
   (c) Town council—town manager or mayor, with or without budgetary town meeting.

III. If the proposed charter denominates the municipality as a city, the charter shall designate one of the following forms of city government:
    (a) Mayor—board of aldermen or mayor—city council.
    (b) City council—city manager.

IV. While limited to the adoption of one of the above-listed forms of city or town government, the voters of a municipality may choose a form of government which, in their opinion, specifically meets the needs of their municipality. Any charter may address such matters of local concern as number of elected officials; at-large or district representation; manner of filling vacancies; powers of nomination, appointment, and confirmation; and terms of office, so long as the provisions of the charter are not contrary to current state law."

■ Claremont is a city. Accordingly, the extent of Claremont's home rule power is the prerogative to choose one of the two specified forms of city government: either a mayor-board of alderman/city council form, or a city council-city manager form. Claremont's charter denominates the latter. The proposed changes would give Claremont a form of government similar to that described in RSA 49-B:2, II(c), an option available only to towns in New Hampshire. The legislature specifically made provision for a "budgetary town meeting" in the paragraph setting forth permissible forms of town government, RSA 49-B:2, II, but omitted any reference to budgetary approval by city voters in the paragraph specifying the two permissible forms of city government, RSA 49-B:2, III. We find that the legislature's failure to provide for budgetary approval by a city's voters manifests its intent to prohibit that form of government for cities.

■ Moreover, RSA 49-B:2, IV, which grants to a municipality discretion in tailoring its charter to its needs, fails to list the mode of budgetary approval as one of those matters subject to local modification. In August 1991, the legislature amended RSA 49-B:2 and created a new chapter, RSA ch. 49-C (Supp. 1991), which governs the conduct of city government. RSA 49-C:23, I (Supp. 1991) makes explicit the legislature's intent that the city council approve the annual budget: "[A]n annual budget shall be finally adopted by the elected body."

■ Furthermore, the duties imposed upon a city council by RSA chapters 44 and 47 are fundamentally incompatible with voter ap-

proval of the annual budget. The legislature has conferred substantial authority upon city officials in order to facilitate the conduct of city government. For example, a city council has the power to purchase property for the city, RSA 47:5. A city council would be deprived of the power to purchase property if it could not guarantee that it would fund its purchases. The power to purchase implies the power to fund. The legislature has a strong interest in ensuring that the power to contract and the power to approve the budget are held by the same entity. The respondents' changes would in effect give the city's voters a veto over any proposed fiscal action by the council. Such a disjunction of power could render a city unable to fulfill its duties under RSA chapters 44 and 47.

■    Therefore, for all the foregoing reasons, we hold that the respondents' proposed changes would create an impermissible form of government under State law.

■■    The respondents next argue that, to the extent that RSA chapter 49-B prohibits voter ratification of a city's budget, the statute violates part I, article 39 of the New Hampshire Constitution. Part I, article 39 defines the extent of municipalities' home rule power in the State of New Hampshire:

> "No law changing the charter or form of government of a particular city or town shall be enacted by the legislature except to become effective upon the approval of the voters of such city or town upon a referendum to be provided for in said law.
>
> The legislature may by general law authorize cities and towns to adopt or amend their charters or forms of government in any way which is not in conflict with general law, provided that such charters or amendments shall become effective only upon the approval of the voters of each such city or town on a referendum."

We have held that "part I, article 39 was intended to prevent the form of government as provided by a charter from being altered by the legislature without a referendum by the people affected . . . ." *Opinion of the Justices*, 112 N.H. 42, 46, 288 A.2d 697, 700 (1972). In New Hampshire, municipal corporations are subdivisions of the State, and have only the powers the State grants to them. *Girard v. Town of Allenstown*, 121 N.H. 268, 270, 428 A.2d 488, 489 (1981); *Piper v. Meredith*, 110 N.H. 291, 295, 266 A.2d 103, 106 (1970). RSA chapter 49-B does not violate part I, article 39 of the State Constitu-

tion because RSA chapter 49-B does not alter the form of government of any municipality; instead, it constrains the available forms of government from which a municipality may choose. Thus, RSA chapter 49-B is a proper exercise of the legislature's inherent power to define and regulate the State's municipal subdivisions.

Pursuant to the second paragraph of part I, article 39, the legislature has authorized cities and towns to "adopt or amend their charters or forms of government in any way which is not in conflict with general law. . . ." The procedure for charter revisions is set forth in RSA 49-B:3, :4, and the procedure for charter amendments is set forth in RSA 49-B:5. The respondents proceeded in accordance with RSA 49-B:5.

In *Albert v. City of Laconia*, 134 N.H. 355, 358, 592 A.2d 1147, 1149 (1991), we determined that "the amendment process is directed toward specific changes to a city charter, whereas the revision process is less specific and contemplates the possible need for a general, more fundamental, change in a city's governmental structure." As noted above, the effect of the proposed changes is to change Claremont's form of government from a city to a town. Changing from a city form of government to a town form of government is clearly a fundamental change, and thus the respondents' proposed changes must be deemed a revision.

> "The key distinction between cities and towns is that in cities . . . all major municipal actions, including passage of ordinances and appropriation of municipal funds, are accomplished by a small group of elected councilmen or alderman, while similar action in towns requires a vote by the citizens assembled at the annual or special town meetings."

P. LOUGHLIN, 13 New HAMPSHIRE PRACTICE, LOCAL GOVERNMENT LAW § 14, at 7 (1990). Therefore, if the voters of Claremont desire to have a form of government that permits them to ratify the annual budget, they may do so by following the procedure for charter revision set out in RSA 49-B:3, :4 (Supp. 1991), by adopting a town form of government.

Finally, the respondents cite part I, article 10 of the New Hampshire Constitution, known as the right of revolution, as a general right to self-determination. Part I, article 10 provides in pertinent part that "whenever the ends of government are perverted, and public liberty manifestly endangered, and all other means of redress are ineffectual, the people may, and of right ought to reform the old,

534

or establish a new government." Without in any way detracting from the continuing validity and truth of part I, article 10, we find that none of the conditions specified in that article have been met in this case. Prohibiting voter ratification of a city's budget hardly "perverts" the ends of government or manifestly endangers public liberty, so long as the city's voters retain the right to elect their local representatives. Moreover, the defendants have not exhausted all other legal means of redress, since, as we noted above, the legislature has set forth a statutory procedure for charter revision, and that option remains available to the voters of Claremont.

Therefore, the respondents' proposed revisions to the Claremont city charter are invalid, and of no effect.

*Affirmed.*

All concurred.