Merrimack
No. 2001-635

TOWN OF HOOKSETT

v.

SIDNEY BAINES & a.

Argued: October 9, 2002
Opinion Issued: December 12, 2002

*Upton & Hatfield, LLP*, of Concord (*Barton L. Mayer* on the brief and orally), for the petitioner.

*Hall, Hess, Stewart, Murphy & Brown, P.A.*, of Manchester (*David W. Hess* on the brief and orally), for the respondent, Sidney Baines, and the intervenor, Hooksett Sewer Commission.

DALIANIS, J. The petitioner, Town of Hooksett (town), appeals an order of the Superior Court (*Fitzgerald*, J.) declaring invalid the town's charter provision imposing term limits on locally elected officials. We affirm in part and vacate in part.

The following relevant facts are undisputed. In 1967, the town voters established a sewer commission (commission) in accordance with RSA 149-I:19-:21 (1996) (formerly RSA 252:19, :20, :22). In 1989, the town adopted a charter that established a town council form of government. *See* RSA ch. 49-B (1991). Section 10.17 of the charter provides: "No member of a board, committee or commission whether appointed or elected can serve more than two (2) consecutive terms."

After serving two consecutive terms as a town sewer commissioner, the respondent, Sidney Baines (Baines), filed a declaration of candidacy for a third term, but later withdrew from the election. He was nonetheless re-elected for a third term after receiving forty-nine write-in votes. The town subsequently filed a petition for declaratory judgment in July 2000, requesting that the court declare Baines ineligible to serve as sewer commissioner for a third term in light of the charter. The trial court held a brief hearing at which the parties presented evidence and legal argument. At the hearing, the town expressly requested that the court not rule on the issue of how the sewer commission could be abolished, but rather address only whether sewer commissioners are subject to section 10.17 of the charter.

In its decision, the trial court noted:

> The sole issue presented in this case appears to be a question of first impression in New Hampshire and it is whether the citizens of a town may by charter amendment set limits on the time an individual may hold an office which was established by state statute.

The court denied the petition, ruling that the town may not alter the qualifications for office set by the legislature. This appeal followed.

The primary issue for our consideration is whether the town has the authority under RSA chapter 49-B to impose term limits upon elected officials. Resolution of this issue necessarily involves an inquiry into whether the town's ability to enact such legislation has been preempted by either State statute or constitutional provision. The town asserted at oral argument that in light of the trial court's findings and rulings, we must

first determine whether the sewer commission is subject to the charter before engaging in a preemption analysis. The trial court granted the following requests for findings and rulings:

> 2. The Hooksett Sewer Commission is an independent public entity and political subdivision of the State of New Hampshire, separate and distinct from the Petitioner Town of Hooksett, and analogous to free-standing village districts authorized pursuant to RSA Chapter 52.
>
> . . . .
>
> 6. The Hooksett Town Charter does not apply to the Hooksett Sewer Commission and, in particular, the election of Hooksett Sewer Commissioners and to the qualifications for holding the office of Sewer Commissioner as the latter are governed by RSA 149-I:19, 20.

The trial court stated, however, that these rulings were limited to the single issue addressed in the order. As a result, we will not decide whether sewer commissions are generally subject to town charters, but will instead consider whether the town's ability to impose term limits is preempted by general law or the constitution.

██ It is well settled that towns cannot regulate a field that has been preempted by the State. *Town of Salisbury v. New England Power Co.*, 121 N.H. 983, 985 (1981). "The preemption doctrine flows from the principle that municipal legislation is invalid if it is repugnant to, or inconsistent with, State law." *Casico v. City of Manchester*, 142 N.H. 312, 315 (1997). Thus, preemption will occur when local legislation either expressly contradicts a statute or otherwise runs counter to the legislative intent underlying a statutory scheme. *Id.* Generally, a detailed and comprehensive State statutory scheme governing a particular field is demonstrative of the State's intent to preempt that field by placing exclusive control in the State's hands. *Id.* That the State has created a comprehensive statutory scheme does not automatically result in preemption, however, because it could nonetheless authorize additional municipal regulation. *Id.* at 316.

That the State has created a comprehensive statutory scheme governing elections in New Hampshire is not disputed. Part I, Article 11 of our State Constitution, in pertinent part, provides: "Every inhabitant of the state, having the proper qualifications, has an equal right to be elected into office." "Because 'proper qualifications' was defined neither in Article 11 nor in the constitution itself, the legislature necessarily had the

constitutional authority to define its scope." *Fischer v. Governor*, 145 N.H. 28, 32 (2000). The legislature has enacted statutes regarding qualifications for elected office. For example, the legislature has provided that any person seeking any elected office in the State must be a citizen of the United States, either by birth or by naturalization, and have a domicile in the State. RSA 655:1, :2 (1996). In addition, with respect to town elections, RSA 669:6 (1996) provides that "[u]nless otherwise provided by law, no person shall hold an elective town office who does not have his domicile within the town."

The town argues that its term limits provision is neither repugnant to, nor inconsistent with, the general statutory scheme because: 1) the provision addresses only local concerns and does not affect State elected officials; and 2) the statutory scheme recognizes a town's interest in managing the internal affairs and structure of government. In addition, the town asserts that its charter provision is not preempted because the legislature has not expressly regulated the enactment of term limits.

"Towns are merely subdivisions of the State and have only such powers as are expressly or impliedly granted to them by the legislature." *Public Serv. Co. v. Town of Hampton*, 120 N.H. 68, 71 (1980). Part 1, Article 39 of our State Constitution, in pertinent part, provides:

> The legislature may by general law authorize cities and towns to adopt or amend their charters or forms of government in any way which is not in conflict with general law, provided that such charters or amendments shall become effective only upon the approval of the voters of each such city or town on a referendum.

We have explained that the expressed purpose of RSA chapter 49-B is to implement the home rule powers recognized in Part I, Article 39 of the State Constitution by authorizing a municipality to adopt a form of government that best addresses its local needs. *See Girard v. Town of Allenstown*, 121 N.H. 268, 272 (1981); RSA ch. 49-B. This legislation "provides the statutory framework through which cities and towns may amend their actual forms of government, and grants them the power necessary to carry out such changes." *Harriman v. City of Lebanon*, 122 N.H. 477, 481 (1982). We have warned, however, that the constitutional authority supporting RSA chapter 49-B "in no way provides or suggests that the towns, cities or other subdivisions of this State should have the right to exercise supreme legislative authority." *Id.* at 482 (quotations omitted). Indeed, the statute expressly provides that its provisions "*shall be strictly interpreted* to allow towns and cities to adopt, amend, or revise a municipal charter relative to their form of government *so long as the resulting charter is neither in conflict with nor inconsistent with the*

*general laws or the constitution of this state.*" RSA 49-B:1 (emphasis added). As a result, RSA chapter 49-B grants a municipality only the power necessary to amend its form of government. *Harriman*, 122 N.H. at 482.

At the time the town adopted its charter in 1989, RSA 49-B:2, IV stated: "Any charter may address such matters of local concern as number of elected officials; at-large or district representation; manner of filling vacancies; powers of nomination, appointment, and confirmation; and terms of office, so long as the provisions of the charter are not contrary to current state law." In 1991, the legislature amended RSA chapter 49-B, adopting RSA chapters 49-C and 49-D to address separately the home rule powers of cities and towns, respectively. RSA 49-D:3 removed the phrase "terms of office," but incorporated many of the items previously listed in RSA 49-B:2, IV when referring to matters that may be addressed by town charter. Specifically, the statute currently provides that:

> (d) Using the guidelines established in RSA 49-C, the charter shall specify at-large or district representation or a combination thereof; the manner of filling vacancies; powers of nomination; appointment and confirmation; requirements for attendance and quorum; any residency or eligibility requirements of up to one year in the town or district and continued residency during a term . . . .
>
> (e) Other matters of local concern may be included in a charter including, but not limited to, conflict of interest provisions which shall be at least as strict as those established in the general laws, citizen powers of initiative, referendum and recall as described in RSA 49-C, and adoption and periodic review of an administrative code, a merit personnel system, a purchasing system and a town investment policy.

RSA 49-D:3, I(d), (e) (Supp. 2002).

The town first argues that under former RSA 49-B:2, IV, it has the authority to impose term limits at the local level because the legislature expressly authorized municipalities to regulate "terms of office." In support of its position, the town relies upon *Roth v. Cuevas*, 603 N.Y.S.2d 962 (Sup. Ct. 1993), in which the court upheld a municipality's ability to impose term limits on local officials through its charter. *See id.* at 966. In that case, the home rule legislation, like former RSA 49-B:2, IV, authorized the city to adopt or amend local laws, which are not inconsistent with constitutional or state law, relating to "[t]he powers, duties, qualifications, number, mode of selection and removal, [and] terms of office . . . of its officers and employees." *Id.* Reasoning that the term limit law

related to "terms of office" and was related to strictly local affairs, the court found that the city was authorized to adopt the law under its home rule powers. *Id.* at 968.

■ Even assuming the former version of RSA 49-B:2, IV is applicable here, we find the town's construction of the phrase "terms of office" under that provision misplaced. Unlike "qualifications" for office, which address a candidate's eligibility for office, the phrase "terms of office" refers to the duration of time during which an elected official holds an office. RSA 669:10 supports this construction as it expressly states that "[e]xcept as otherwise provided, the term of office of any officer elected under this chapter shall begin upon his election and qualification for office and shall end upon the election and qualification of his successor." We find a clear distinction between regulating the length of a term of office and the disqualification of an individual to elected office based upon his or her prior service. Moreover, we find *Roth* distinguishable because, unlike New York's Constitution and home rule law, our State legislature mandates that we interpret RSA chapter 49-B strictly so it is neither in conflict with nor inconsistent with the general law or the constitution. *Cf. Roth,* 603 N.Y.S.2d at 966 (both New York Constitution and home rule law provide that powers granted to municipalities shall be liberally construed). Thus, we do not agree that former RSA 49-B:2, IV provides the town with the authority to enact term limit legislation.

■ Alternatively, the town argues that RSA 49-D:3 authorizes it to impose term limits. "We interpret legislative intent from the statute as written, and therefore, we will not consider what the legislature might have said or add words that the legislature did not include." *Appeal of Brady,* 145 N.H. 308, 310 (2000) (quotations and brackets omitted). By expressly providing that the town "charter shall specify . . . any residency or eligibility requirements of up to one year in the town or district and continued residency during a term," the legislature limited the town's authority to regulate qualifications for elected office. *See* RSA 49-D:3, I(d). Moreover, given our interpretation of the phrase "including but not limited to" in other contexts, we find that RSA 49-D:3, I(e) does not authorize the town to impose term limits, since regulating qualifications for office is not the type of local concern included within that provision. *Cf. Roberts v. General Motors Corp.,* 138 N.H. 532, 538-39 (1994) (holding that phrase "including but not limited to," for purposes of construing Consumer Protection Act, limits the applicability of the law to the types of acts particularized in the statute).

If the legislature had intended to vest towns with the ability to impose term limits, it could have done so expressly or, at the least, have granted

them the power to regulate qualifications generally. *Cf. Dutmer v. City of San Antonio, Tex.*, 937 F. Supp. 587, 594 (W.D. Tex. 1996) (Texas Local Government Code provides that municipalities may prescribe the qualifications, duties, and tenure of office for officers.). Even in *Roth*, the pertinent home rule legislation provided expressly that a local government may regulate the *qualifications* of its officers and employees, to the extent it is not inconsistent with constitutional or state law. *Roth*, 603 N.Y.S.2d at 966.

■ The legislature has created a comprehensive statutory scheme governing elections and has defined the scope of qualifications necessary to obtain elected office. Although the right to elected office is not absolute, *see Paey v. Rodrigue*, 119 N.H. 186, 189 (1979), this statutory scheme is designed to make elective office as accessible as possible to the citizens of New Hampshire by imposing a minimum number of qualifications, thereby furthering the objectives of our State Constitution. To allow a municipality to impose term limits would be repugnant to the implied intent of the statutory scheme. We hold, therefore, that the State has created a comprehensive statutory scheme governing the field of elections, including qualifications for office, and has neither expressly nor impliedly granted towns the authority to impose term limits. As a result, the town's term limits provision is preempted by statutory law and Part I, Article 11 of the State Constitution. *Accord Allred v. McLoud*, 31 S.W.3d 836, 838-39 (Ark. 2000); *Polis v. City of La Palma*, 12 Cal. Rptr. 2d 322, 324-25 (Ct. App. 1992). In light of our decision, we need not reach the town's remaining arguments related to this issue.

The town next argues that the trial court erred in ruling that only the town's voters have the authority to abolish the sewer commission. It contends that, pursuant to its charter and RSA 49-D:3, I(a), the town council is vested with the authority to abolish the sewer commission. The respondent and the intervenor argue that this issue is not before us because it was not litigated below.

The record reveals that the issue of terminating the sewer commission was not litigated before the trial court either in the pleadings or during the trial. In fact, the town's counsel requested specifically that the trial court not rule on the issue. Despite this request, however, the court ruled that the town council does not have the authority to abolish the sewer commission and that the voters alone have such authority. Because neither

party intended to litigate this issue below, we vacate the trial court's ruling on this issue.

*Affirmed in part and vacated in part.*

NADEAU and DUGGAN, JJ., concurred.