Merrimack
No. 2009-360

CHARLES P. FORSBERG & a.

v.

KEARSARGE REGIONAL SCHOOL DISTRICT

Argued: February 17, 2010
Opinion Issued: May 7, 2010

Charles P. Forsberg, non-lawyer representative appearing by approval of the Supreme Court under Rule 33(2), by brief and orally, for the petitioners.

*Soule, Leslie, Kidder, Sayward & Loughman, P.L.L.C.,* of Salem (*Barbara F. Loughman* and *Maureen L. Pomeroy* on the brief, and *Ms. Loughman* orally), for the respondent.

DALIANIS, J. The petitioners, Charles P. Forsberg and other residents of the Kearsarge Regional School District, appeal an order of the Superior Court (*Sullivan,* J.) dismissing their petition for declaratory judgment. We affirm.

The following relevant facts are supported by the record or are taken from our decision addressing a similar issue in *Forsberg v. Kearsarge Regional School District,* 156 N.H. 560 (2007). The respondent, Kearsarge Regional School District (school district), is a cooperative school district consisting of the towns of Bradford, Newbury, New London, Springfield, Sutton, Warner and Wilmot. In 1997, the school district voters adopted a home rule municipal charter (the charter). *Forsberg,* 156 N.H. at 561.

In 2006, Forsberg initiated a citizen petition to amend the charter procedures for voting on budget proposals so that the official ballot would automatically include an option to vote for a "default budget" in addition to the other budget proposals. A "default budget" is the previous year's operating budget adjusted for debt service, contracts, and other obligations previously incurred or mandated by law, and reduced by one-time expenditures. RSA 40:13, IX(b) (Supp. 2009). On the petition, the text of the proposed warrant article to amend the charter was enclosed inside a

border. Outside the border, there was a heading called a "preamble summary" on the petition, which read: "The Petitioners desire that the following question be put before the voters in the year 2006-2007, so that there appears at least one additional choice of operating budget amount, other than [that proposed by] the School Board and Municipal Budget Committee in the year 2007 and beyond."

The proposed charter amendment was placed as a warrant article on the 2007 official ballot, but without the preamble summary language. In addition, following the text of the proposed amendment were parenthetical notations stating "School Board does not recommend" and "[Municipal Budget Committee] does not recommend." The proposed charter amendment was defeated by a vote of 2,671 to 851.

Thereafter, Forsberg and others petitioned for declaratory relief in superior court, arguing, among other things, that it was unlawful to: (1) add the school board and municipal budget committee (MBC) recommendations to the official ballot; and (2) remove the preamble summary from the warrant article. The trial court dismissed their petition. This appeal followed.

We will not disturb a trial court's dismissal of a petition for declaratory judgment unless its decision is an unsustainable exercise of discretion, or is unsupported by the evidence or legally erroneous. *McGrath v. Town of Canaan*, 147 N.H. 623, 624 (2002).

The petitioners first argue that the trial court erred in ruling that it was lawful to add the school board and MBC recommendations to the warrant article on the official ballot. Although the petitioners do not dispute that section XI, A(5)(e) of the charter permits such recommendations, they contend that this section of the charter conflicts with RSA chapter 49-B (2003 & Supp. 2009), and, therefore, is unlawful.

Whether the charter conflicts with RSA chapter 49-B constitutes a question of law, which we review *de novo. Cf. Town of Hooksett v. Baines*, 148 N.H. 625, 627-30 (2002) (reviewing whether charter provision was inconsistent with statutory scheme for home rule). We are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *Appeal of Parkland Med. Ctr.*, 158 N.H. 67, 72 (2008). We first examine the language of the statute, and, where possible, ascribe the plain and ordinary meaning to the words used. *Id.* When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent, and we will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* We also interpret a statute in the context of the overall statutory scheme and not in isolation. *Liam Hooksett, LLC v. Boynton*, 157 N.H. 625, 628 (2008).

Section XI, A(5) of the charter establishes the school district's procedures for warrant articles appearing on the official ballot. Subsection A(5)(e) provides, "The School Board and the MBC shall each have the option of posting a recommendation on each article not already requiring a notation under RSA 32:5, V on the posted warrant." The articles "already requiring a notation" are those appearing in the warrant as part of a special warrant article regarding appropriations. RSA 32:5, V (Supp. 2009). Thus, the charter expressly permits the school board and the MBC to post recommendations on warrant articles unrelated to appropriations, such as the one at issue here.

RSA 49-B:1 (2003) is the "Purpose and Intent" section of the chapter entitled "Home Rule — Municipal Charters." It provides, in pertinent part:

> It is the purpose of this chapter to implement the home rule powers recognized by article 39, part first, of the constitution of the state of New Hampshire. To that end, the general court hereby provides a vehicle whereby a municipality may adopt a form of government that best addresses local needs. At the same time, however, the general court recognizes a need to require uniform procedures and practices when there is a corresponding state interest. . . . Nothing in this chapter shall be construed to create any power in, or confer any power upon, any city or town beyond that necessary to carry out the amendment of a charter or form of government as set forth in this chapter. The general laws of this state shall . . . be construed to be consistent with this chapter to the greatest extent possible in the effectuation of this chapter's stated purpose. Accordingly, this chapter shall be strictly interpreted to allow towns and cities to adopt, amend, or revise a municipal charter relative to their form of government so long as the resulting charter is neither in conflict with nor inconsistent with the general laws or the constitution of this state.

"RSA chapter 49-B provides the statutory framework through which cities and towns may amend their actual forms of government, and grants them the power necessary to carry out such changes." *City of Manchester Sch. Dist. v. City of Manchester*, 150 N.H. 664, 669 (2004) (quotation omitted). "We have cautioned, however, that the constitutional authority supporting RSA chapter 49-B in no way provides or suggests that . . . towns . . . have the right to exercise supreme legislative authority." *Id.* at 669-70 (quotation omitted). Part I, Article 39 of the State Constitution "has granted the legislature the power to authorize *municipalities* to *amend* their *charters* in any way which is not in conflict with general law." *Harriman v. City of Lebanon*, 122 N.H. 477, 482 (1982). "These home rule powers must be

exercised in accordance with" applicable home rule statutes, which "confer substantial power on home-rule cities." *Id.* "When article 39 was proposed as a constitutional amendment . . . the voter's guide said the following . . . : 'This provision will not affect special acts which do not literally change the charter or forms of government.' " *Id.* at 481 (quotation, brackets and ellipses omitted). "RSA chapter 49-B does not provide municipalities with the authority to enact rent control ordinances, amend their retirement systems or impose term limits on elected officials because, in doing so, municipalities impermissibly intrude into the legislative authority of the general court." *City of Manchester*, 150 N.H. at 671. In addition, a city does not have the authority to amend its charter to make the school district into a city department. *Id.*

█ In arguing that section XI, A(5) of the charter conflicts with RSA 49-B:1, the petitioners contend that the option to place the school board and MBC recommendations on warrant articles proposing the default budget option is a power "beyond that necessary to carry out the amendment of a charter." We disagree. RSA 49-B:1 is not relevant to whether the recommendations may appear on the ballot. RSA 49-B:1 is part of "the statutory framework through which cities and towns may amend their actual forms of government." *Id.* at 669 (quotation omitted). The recommendation is not used to amend the school district's actual form of government. The amendment to the charter occurs by vote. The recommendation is not an exercise of legislative authority and it does not change the charter or form of government.

We also reject the petitioners' argument that the charter conflicts with RSA 49-B:5-a (Supp. 2009). RSA 49-B:5-a mandates that "[t]he municipal clerk . . . file a report with the secretary of state, attorney general, and the commissioner of the department of revenue administration." RSA 49-B:5-a, I. Within thirty days of the report, these authorities "shall review the proposed . . . charter amendment to insure that it is consistent with the general laws of this state." RSA 49-B:5-a, I(c). Nothing in these provisions prohibits the school district or the MBC from making recommendations with respect to the proposed amendment.

In support of their contention that there is a conflict between RSA chapter 49-B and the charter, the petitioners argue that this case raises an issue of state preemption. We considered a similar issue in deciding whether a town's charter may impose term limits on elected officials. *Baines*, 148 N.H. at 626. We held that it could not because such a charter provision was preempted by the State's comprehensive statutory scheme governing the field of elections and Part I, Article 11 of the State Constitution. *Id.* at 631.

■ "The preemption doctrine flows from the principle that municipal legislation is invalid if it is repugnant to, or inconsistent with, State law." *Id.* at 627 (quotation omitted). "Thus, preemption will occur when local legislation either expressly contradicts a statute or otherwise runs counter to the legislative intent underlying a statutory scheme." *Id.* "Generally, a detailed and comprehensive State statutory scheme governing a particular field is demonstrative of the State's intent to preempt that field by placing exclusive control in the State's hands." *Id.* "That the State has created a comprehensive statutory scheme does not automatically result in preemption, however, because it could nonetheless authorize additional municipal regulation." *Id.*

■ We see nothing in section XI, A(5) of the charter that expressly contradicts RSA chapter 49-B; nor is there anything that otherwise runs counter to the legislative intent underlying the chapter governing home rule and municipal charters. To the contrary, the very purpose of home rule is not to place exclusive control in the State's hands, but to "provide[] a vehicle whereby a municipality may adopt a form of government that best addresses local needs," as long as "the resulting charter is neither in conflict with nor inconsistent with the general laws or the constitution of this state." RSA 49-B:1. The petitioners do not argue that the charter provision conflicts with any other State law. The statutory scheme relative to home rule, by its very nature, authorizes additional municipal regulation. Accordingly, we disagree that RSA chapter 49-B preempts the charter provision that permits school board and MBC recommendations.

The petitioners also argue that there is "no statutory authority" for adding school board and MBC recommendations to a warrant article. That there may be no statute that specifically authorizes the recommendations is of no consequence. RSA 49-B:1 "allow[s] towns and cities to adopt, amend, or revise a municipal charter relative to their form of government so long as the resulting charter is neither in conflict with nor inconsistent with the general laws or the constitution of this state." Section XI, A(5) of the charter adopted by the school district provides the authority for adding the recommendations. No additional authority is necessary. Accordingly, we cannot say that the trial court erred in ruling that adding the school board and MBC recommendations to the official ballot was lawful.

Finally, the petitioners argue that the trial court erred in ruling that it was lawful to remove the preamble summary from the warrant article. However, this issue was not raised in the petitioners' notice of appeal, and, accordingly, we will not address it. *See Guyotte v. O'Neill,* 157 N.H. 616, 623 (2008). To the extent that the petitioners argue that the additions to and

deletions from the official ballot were unconstitutional, these arguments were also not raised in the notice of appeal, and we will not address them for the same reason. *See id.*

*Affirmed.*

BRODERICK, C.J., and DUGGAN and HICKS, JJ., concurred.