Hillsborough-northern judicial district
No. 2009-791

CITY OF MANCHESTER

v.

SECRETARY OF STATE & a.

RYAN CASHIN & a.

v.

CITY OF MANCHESTER

Argued: June 15, 2010
Opinion Issued: November 10, 2010

*City Solicitor's Office*, of Manchester (*Peter R. Chiesa* on the brief and orally), for the City of Manchester.

*Backus, Meyer & Branch, LLP,* of Manchester (*Robert A. Backus* on the brief and orally), for the petitioners, Ryan Cashin *& a.*

*Michael A. Delaney,* attorney general (*Glenn A. Perlow,* assistant attorney general, on the brief and orally), for defendants Secretary of State, Attorney General and Commissioner, New Hampshire Department of Revenue Administration.

*Joseph Kelly Levasseur,* of Manchester, by brief, for the intervenor, N.H. Advantage Coalition.

*Douglas, Leonard & Garvey, P.C.,* of Concord (*Charles G. Douglas, III* on the brief), for Concord Taxpayers Association, as *amicus curiae.*

*Wadleigh, Starr & Peters, PLLC,* of Manchester (*Dean B. Eggert* and *Gregory M. Sargent* on the brief), for New Hampshire School Administrators Association, as *amicus curiae.*

Fred S. Teeboom, non-lawyer representative appearing by approval of the Supreme Court under Rule 33(2), on the brief and orally, for Nashua Taxpayers Association, as *amicus curiae.*

HICKS, J. These consolidated cases challenging the legality of a proposed amendment to the City of Manchester's charter are before us on interlocutory transfer without ruling from the Superior Court (*O'Neill, J.*). *See* SUP. CT. R. 9. We conclude that the amendment is invalid.

The following facts are recited in the interlocutory transfer statement or are supported by the record. On July 30, 2008, the city clerk for the City of Manchester (City) received a charter amendment petition that proposed amending the City's charter to limit annual budget increases "to the change in the National Consumer Price Index — Urban as published by the United States Department of Labor for the calendar year immediately preceding the year of the budget adoption" (the spending cap). After the petition was supplemented with additional valid signatures, the deputy city clerk found that it was sufficient to require a public hearing pursuant to RSA 49-B:5, IV(a) (2003). In accordance with RSA 49-B:5-a, the City filed a certified copy of the preliminary report relative to the proposed charter amendment with the secretary of state, the attorney general and the commissioner of the department of revenue administration for their review "to insure that [the proposed amendment] is consistent with the general laws of this state." RSA 49-B:5-a, I (Supp. 2006) (amended 2008). The secretary of state replied, on behalf of himself, the attorney general's office and the department of revenue administration, that they did not object to the proposed amendment. On July 6, 2009, the City appealed that determination pursuant to RSA 49-B:10, IV (2003).

On August 20, 2009, a petition for declaratory judgment and injunctive relief challenging the legality of the proposed amendment was filed by petitioners Ryan Cashin, Richard Rothwell, Joseph Gallagher, David McCloskey, Benjamin Clifford, Kathy Desjardin, Scott Nichols, Maxine Mosley, Josiette White, Michael Farley and Bonnie Doherty (the Cashin petitioners), on their own behalf as voters and citizens of Manchester and as part of the non-profit organization Keep Manchester Moving.

On September 8, 2009, New Hampshire Tax Advantage Coalition (NHTAC) moved to intervene in both the City's appeal and the declaratory judgment action. On September 15, 2009, the trial court authorized an interlocutory transfer without ruling to this court of certain questions in the City's appeal. Subsequently, the trial court consolidated the declaratory judgment action with the City's appeal and the interlocutory transfer statement was supplemented accordingly.

The trial court transferred the following questions of law:

A.  Whether the statutory scheme for municipal budget process enacted under RSA 49-C:23 preempts the proposed charter amendment?

B.  Whether the proposed charter amendment illegally impairs the mayor's duty under RSA 49-C:16 to present the city's board of mayor and aldermen with an original budget based upon the financial needs of the city?

C.  Whether the proposed charter amendment illegally impairs the powers and duties vested in the city's elected body by RSA 44 and 47?

D.  Whether RSA 49-B expressly prohibits the legislation of a tax cap?

(Capitalization omitted.) On October 6, 2010, we issued an order amending the interlocutory transfer statement, on our own motion, to add the following question of law:

Whether the two-thirds override provision of the proposed charter amendment conflicts with RSA 49-C:12, I.

(Capitalization omitted.) We also ordered supplemental briefing to address the added question.

On appeal, the City and the Cashin petitioners argue that the charter amendment: (1) is preempted by the comprehensive statutory scheme governing the budget process for cities; (2) interferes with the mayor's duty to present a budget to the board of mayor and aldermen; and (3) exceeds

the scope of a permissible charter amendment under RSA chapters 49-B and 49-C. In addition, the City argues that the amendment impermissibly impairs the powers and duties of the City's elected body under RSA chapters 44 and 47 and the Cashin petitioners argue that, like the amendment at issue in *City of Claremont v. Craigue*, 135 N.H. 528 (1992), the charter amendment here "derogates from the plenary authority granted to the governing body of a city rather than the voters." In their supplemental briefs, the City and the Cashin petitioners argue that the charter amendment also conflicts with RSA 49-C:12, I.

The NHTAC argues that the charter amendment "is simply a change to the structure and formation of the City's annual budget procedure." It further argues that RSA 49-C:23 merely "lay[s] out a basic structural form for a city charter to follow" and asserts that nothing in that statute prohibits the City from placing a spending cap in its charter. In its supplemental brief, NHTAC argues that the charter amendment does not conflict with RSA 49-C:12, I.

The State agencies note that while they reviewed the proposed charter amendment as required by statute, *see* RSA 49-B:5-a, I, they "do not advocate for or against the proposed Charter Amendment, and do not have a direct interest in the outcome of this matter." They nevertheless filed a brief offering "their interpretation of the issues raised by the City in the proposed Charter Amendment at issue." That interpretation is essentially that the amendment: (1) neither expressly contradicts nor otherwise runs counter to the legislative intent underlying either RSA 49-C:23 or RSA 49-C:16; (2) does not "impair[] the powers and duties of the elected body under RSA ch[apters] 44 and 47 preserved by RSA 49-C:15"; and (3) "falls within the scope of permissible charter processes under RSA ch[apter] 49-C." The State agencies also filed a supplemental brief contending that the charter amendment does not conflict with RSA 49-C:12, I.

We begin with the first transferred question, regarding preemption by RSA 49-C:23. Both the City and the Cashin petitioners argue that RSA 49-C:23 invalidates the charter amendment at issue. The City frames its argument in terms of preemption, while the Cashin petitioners argue that the City lacked authority to adopt the amendment. Our cases examining the validity of municipal charter amendments have employed both modes of analysis, sometimes interchangeably. *See, e.g., Town of Hooksett v. Baines*, 148 N.H. 625, 626 (2002) (stating that resolution of the issue of "whether the town has the authority under RSA chapter 49-B to impose term limits upon elected officials . . . necessarily involves an inquiry into whether the town's ability to enact such legislation has been preempted by either State statute

or constitutional provision"). However, since the transferred question couches the issue in preemption terms, we elect to address it under that rubric.

■ "The preemption doctrine flows from the principle that municipal legislation is invalid if it is repugnant to, or inconsistent with, State law. Thus, preemption will occur when local legislation either expressly contradicts a statute or otherwise runs counter to the legislative intent underlying a statutory scheme." *Town of Hooksett*, 148 N.H. at 627 (quotation and citation omitted). The preemption issue is, then, "essentially one of statutory interpretation and construction." *Lakeside Lodge v. Town of New London*, 158 N.H. 164, 168 (2008) (quotation omitted). Accordingly, we apply the following well-settled rules:

> Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme. When construing the meaning of a statute, we first examine the language found in the statute, and where possible, we ascribe the plain and ordinary meanings to words used. We interpret statutes not in isolation, but in the context of the overall statutory scheme.

*Coco v. Jaskunas*, 159 N.H. 515, 518-19 (2009) (quotations and citation omitted).

The statutory scheme at issue implements the so-called "home rule amendment," Part I, Article 39 of the State Constitution. *City of Manchester Sch. Dist. v. City of Manchester*, 150 N.H. 664, 666 (2004). That amendment provides in part:

> The legislature may by general law authorize cities and towns to adopt or amend their charters or forms of government in any way which is not in conflict with general law, provided that such charters or amendments shall become effective only upon the approval of the voters of each such city or town on a referendum.

N.H. CONST. pt. I, art. 39.

The legislation implementing the home rule amendment is embodied in RSA chapters 49-B, 49-C and 49-D. *See City of Manchester Sch. Dist.*, 150 N.H. at 667. RSA chapter 49-B "provides the statutory framework through which cities and towns may amend their actual forms of government, and grants them the power necessary to carry out such changes." *Town of Hooksett*, 148 N.H. at 628 (quotation omitted). In turn, "RSA chapters 49-C and 49-D work in conjunction with RSA chapter 49-B by providing a limited list of forms of government that are available to municipalities." *City of*

*Manchester Sch. Dist.*, 150 N.H. at 669. Specifically, a municipality "may establish either a town or city government," RSA 49-B:2, I (Supp. 2009), and must prepare its charter according to the framework statutorily mandated for that municipal form. *See* RSA ch. 49-C (2003 & Supp. 2009) (city); RSA ch. 49-D (2003 & Supp. 2009) (town). We take judicial notice that Manchester's charter denominates it as a city and that the City has chosen the mayor-board of aldermen form of government as permitted under RSA chapter 49-C. *See City of Manchester Sch. Dist.*, 150 N.H. at 668. Thus, the mayor and board of aldermen comprise the City's elected body. *See* RSA 49-B:2, IV(b) (2003); RSA 49-C:8 (2003).

We have noted that "RSA chapter 49-C sets forth an exhaustive blueprint for [the mayor-board of aldermen] form of government." *City of Manchester Sch. Dist.*, 150 N.H. at 668. In particular, it mandates that the city's charter contain certain provisions relating to the city's budget. *See* RSA 49-C:23 (Supp. 2009). RSA 49-C:23 provides in part:

> **Budget Process and Fiscal Control.** The charter shall provide for the following:
>
> I. A budget submission date and a date by which an annual budget shall be finally adopted by the elected body. Failing final adoption by the established date, the budget shall be determined as provided in the city charter, or as originally submitted by the chief administrative officer if no such provision is made in the city charter.
>
> II. One or more public hearings on the budget before its final adoption. A copy of the proposed budget and notice of the public hearing shall be published at least one week in advance of any public hearing.

RSA 49-C:23.

■ The Cashin petitioners assert that the spending cap in the charter amendment conflicts with this provision, in particular, with the duty and sole authority of the City's elected body to approve the City's budget. NHTAC contends that this provision is "nothing more than a structural plan or roadmap for the city to follow when initiating its own form of budget ordinances the city should follow when putting its charter together" and does not set forth "all inclusive legislative mandates preempting the city from establishing spending restrictions on its government." For purposes of this appeal, we need not determine how extensive or "inclusive" the mandates of RSA 49-C:23 are; we previously determined, however, that this

provision "makes explicit the legislature's intent that the [city's elected body] approve the annual budget." *City of Claremont*, 135 N.H. at 531. Accordingly, we must examine whether the proposed amendment conflicts with this intent.

NHTAC and the state agencies argue that a spending cap is not inconsistent with the board of mayor and aldermen's authority to adopt a budget because that body retains authority to override the cap by a two-thirds majority. NHTAC also asserts that "[t]here is nothing in state law that forces the City to pass its budget by a simple majority." The Cashin petitioners assert, to the contrary, that RSA 49-C:12, I (2003) requires "decisions concerning the business to come before a board of mayor and alderm[e]n . . . to be by majority vote" and "disallow[s] super-majority votes in . . . [general business] matters." We agree.

RSA 49-C:12, I, provides:

> I. The mayor shall preside over all meetings of the elected body, and the city clerk shall act as a clerk of the body. All meetings of the elected body shall be public in accordance with RSA 91-A. Regular meetings shall be held at such hours on such days of the week, at such intervals, as the charter may designate and special meetings upon such notice as is required in the charter. The elected body shall establish its own rules, and a majority shall constitute a quorum for the transaction of the business of the board. The mayor shall have the right to introduce bills and initiate other measures at the meetings and to speak at meetings upon pending measures without resigning the chair. In cases where the mayor is directly elected, the mayor shall not be counted to make a quorum of such board, nor vote as a member of the board except in case of equal division.

RSA 49-C:12, I; *see* RSA 45:9 (2003) (stating mayor shall have no vote in action of board of aldermen "except in case of an equal division"); *cf.* RSA 49-C:12, II (2003) (city may by charter amendment allow mayor to vote at city council meetings).

The admonition that the mayor may not vote "except in case of equal division" manifests the legislature's intention that aldermanic boards conduct ordinary business by the vote of a simple majority. Other statutory provisions mandating a two-thirds majority in specific instances bolster this conclusion. *See* N. SINGER, STATUTES AND STATUTORY CONSTRUCTION 417 (7th ed. 2007) ("The force of the maxim [*expressio unius est exclusio alterius*] is strengthened where a thing is provided in one part of the statute and omitted in another."); *cf. State v. Guertin*, 89 N.H. 126, 128

(1937) (noting that where the legislature used the word "regulate" six times in a statute "with other words limiting its scope, it is to be assumed that the Legislature, when using the word without limitation intended to use it broadly"). For example, RSA 49-C:23 itself directs that a city charter set forth "[p]rocedures for appropriation of funds, after notice and public hearing and by a 2/3 vote, for purposes not included in the annual budget as adopted." RSA 49-C:23, VI (Supp. 2009); *see* RSA 45:9 (2003) (two-thirds majority of board of aldermen required to override mayor's veto); RSA 47:11-a, III (2003) (mass transportation); RSA 47:27, I (2003) (siting of oil refinery in a city); RSA 48:20, III (2003) (establishment of office of director of human services). Thus, as the Cashin petitioners assert, "when the legislature wanted to deviate from the general requirement in RSA 49-C:12, I for a majority vote of a quorum to adopt a measure, it did so by a specific provision for such a super-majority vote."

■■ Having interpreted RSA 49-C:12, I, to require a simple majority vote unless otherwise specified by statute, we conclude that the proposed charter amendment is inconsistent with state law. Because the amendment constrains the board to either abide by the spending cap or act by a two-thirds majority to override it, it conflicts with the board's authority to adopt a budget, *see* RSA 49-C:23, by the vote of a simple majority, *see* RSA 49-C:12, I. We conclude, therefore, that the spending cap is preempted by RSA 49-C:12, I, and RSA 49-C:23. Accordingly, we answer the first and the added transferred questions affirmatively and, in light of this conclusion, we need not address the parties' other arguments or the remaining transferred questions of law.

*Remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and CONBOY, JJ., concurred.