HICKS and HANTZ MARCONI, JJ., concurring in part and dissenting in part.
*891 We concur in parts II.A., II.B.1. and II.B.2. of the majority's decision. We write separately because we disagree with part II.B.3. of that decision. We agree with plaintiff Teeboom that, pursuant to the plain language of RSA 49-B:13, II-a (2012), the spending cap of defendant City of Nashua (City) is enforceable regardless of whether it contains an override provision. On its face, RSA 49-B:13, II-a pertains to "[a]ll town or city charters which have been adopted, revised or amended to include a tax or spending cap of any kind." RSA 49-B:13, II-a. Under RSA 49-B:13, II-a, all such charters that include a spending cap "of any kind" are "hereby endorsed, ratified, validated, and legalized and are fully enforceable." Id. (emphases added). Pursuant to its plain meaning, therefore, RSA 49-B:13, II-a renders the City's spending cap "fully enforceable" regardless of whether it contains an override provision.
We disagree with the City and the majority that the last clause of RSA 49-B:13, II-a narrows the phrase "hereby endorsed, ratified, validated, and legalized and are fully enforceable." The plain meaning of the last clause, "without regard to whether such entities or actions were authorized by law at the time they were established or taken," is that a charter, which was amended or adopted before Senate Bill 2 was enacted to include a spending cap "of any kind," is "fully enforceable," even though, when the charter was amended or adopted, state law did not expressly allow a city or town to adopt a spending cap. See City of Manchester v. Sec'y of State, 161 N.H. 127, 132-34, 13 A.3d 262 (2010).
To our view, the majority and the City misconstrue the plain meaning of the phrase "are fully enforceable." Under the majority's and the City's interpretation, previously-adopted spending caps are only "fully enforceable" if they contain an override provision. Such an interpretation requires that we add language to RSA 49-B:13, II-a, which the legislature did not see fit to include. RSA 49-B:13, II-a renders "fully enforceable" previously-adopted spending caps "of any kind," not just those containing override provisions.
Moreover, to the majority and the City, previously-adopted spending caps are not, in fact, "fully" or entirely enforceable. Rather, in the City's words, "[t]hey are saved from a challenge asserting that they were not authorized by law at the time they were enacted," but are not "saved from challenges asserting that they are not authorized by current law." However, the use of the present tense indicates that previously-adopted spending caps are capable of being enforced under the current statutory scheme.
We acknowledge that, at first blush, it appears that enforcing the City's spending cap, which does not contain an override provision, contravenes the legislature's intent "to require uniform procedures and practices when there is a corresponding state interest," assuming, of course, that the State has an interest in ensuring that a spending cap contains an override provision. RSA 49-B:1 (2012). However, the purpose of RSA chapter 49-B, and correspondingly, RSA chapters 49-C and 49-D, is to balance the need for uniform procedures and practices with a municipality's interest in "adopt[ing] a form of government that best addresses local needs." Id. Whether allowing previously-adopted spending caps not to contain override provisions while requiring newly-adopted spending caps to contain such provisions strikes the right balance is a policy decision for the legislature, not for this court. See Petition of Kilton, 156 N.H. 632, 645, 939 A.2d 198 (2007).
*892 For all of the above reasons, therefore, we would reverse the trial court's determination that the City's spending cap is unenforceable because it does not contain an override provision and remand for further proceedings.